## Richmond

### DORSEY LEE CAMPBELL

### V.

### COMMONWEALTH OF VIRGINIA

Record No. 830336.

March 9, 1984.

Present: All the Justices.

Cabell F. Cobbs (Virginia B. Garrison; Rhea, Vellines & Garrison, on brief), for appellant.

Robert Q. Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Dorsey Lee Campbell was tried by a jury and convicted, under Code § 18.2-370 (1), of indecent exposure with lascivious intent, a felony. The statue reads in pertinent part as follows:

> Any person eighteen years of age or over, who, with lascivious intent, shall knowingly and intentionally: (1) Expose his or her sexual or genital parts to any child under the age of fourteen years to whom such person is not legally married. . .
> . . . .
> . . . shall be guilty of a class 6 felony.

On appeal, Campbell contends the evidence was insufficient to establish either that he had the necessary lascivious intent or that the indecent exposure involved was intentional. We find the evidence sufficient; therefore, we will affirm Campbell's conviction.

The evidence, viewed in the light most favorable to the Commonwealth, establishes that on July 9, 1982, Nikki Eherenman, then 8 years old, and her friend, Daniel Brown, were riding their bicycles in an apartment complex known as Country Club Court. A railroad line ran near the complex. Nikki and Daniel rode into a cul-de-sac from which they had a view of the railroad tracks. Nikki saw Campbell "hiding behind [a] bush" near the tracks. He was standing approximately 87 feet from her but she had a clear line of sight to his position except for bushes which obscured Campbell's body from his knees to his feet. She had an unobstructed view of Campbell from the top of his head to his knees.

Nikki noticed that Campbell was looking at her. She was asked on direct examintion whether anything in particular drew her at-

tention to him. She said he was gesturing towards himself. She was then asked whether Campbell did anything after she started looking in his direction. She said yes, "[h]e started taking his pants off to his knees." Nikki said Campbell was not wearing any underpants. She said that when he pulled down his pants she exclaimed "no," at which point her friend, Daniel, came and called for her to leave.

On cross-examination, Nikki reiterated that Campbell pulled his pants down *after* he had gotten her attention by gesturing to her. Campbell's counsel asked, "And you saw him when he pulled his pants down." She replied, "Yes sir." He challenged her again saying, "And you say that he beckoned to you. When you first saw him did he have his pants up or were they already down?" She responded, "They were all the way up."

Upon further examination, Campbell's counsel established that Campbell beckoned to Nikki four times. The following exchange occurred:

"Q. Okay. Now, did the man beckon to you like — I'd like for you to think about it for just a minute. How many times did he beckon?
A. For me to come?
Q. Yes.
A. Probably four times."

Thereafter, Nikki made clear that one of these gestures was made after Campbell had pulled his pants down. Campbell's counsel asked this question: "And then his pants were down and he beckoned towards you once, is that right?" Nikki answered, "Yes sir."

■ The statute involved in this appeal has been considered by the Court in two previous cases. *Breeding v. Commonwealth*, 213 Va. 344, 192 S.E.2d 807 (1972), and *McKeon v. Commonwealth*, 211 Va. 24, 175 S.E.2d 282 (1970). In both cases, we reversed the convictions, on the grounds that lascivious intent was not proved. Campbell contends that the evidence against him is no stronger than the evidence adduced in *Breeding* and *McKeon* and that his conviction likewise should be reversed. We disagree. In our opinion, those cases are distinguishable.

*McKeon* is the central case because there we analyzed the statute, defined lascivious intent, and set forth the evidence that must be adduced to prove that intent. There, McKeon, dressed only in

his bathrobe, called to a 10-year-old neighborhood girl who was playing in back of his house and asked her to go to a nearby store to buy him some bread and milk. He gave her a dollar to make the purchase. When she returned he gave her a 25¢ tip. A moment later he called to her to ask what had happened to his change. She told him it was in the bag with the items. As the girl was walking away, McKeon called to her again and gave her an additional 10¢ tip which was part of the change he found in the bag. The girl took the money and began playing with McKeon's dog, outside the house. McKeon, who was inside, called again to the girl, this time saying that he wanted to talk to her. The girl became nervous, said no, and turned to walk home. McKeon called to her yet another time and said "turn around." When she turned she saw him standing on his porch, 35 feet away, with his hands on his hips and his robe open exposing his chest and private parts. He was smiling, but he was not sexually aroused and he made no gestures to the little girl. She immediately ran to a neighbor's house.

In *McKeon*, we said the word "lascivious" should be given its ordinary meaning:

> The word "lascivious" is not defined in the statute, and must therefore be given its ordinary meaning in determining the legislative intent in the use of the word in this particular statute. As so determined, the word "lascivious" describes a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.

211 Va. at 27, 175 S.E.2d at 284. Next, we explained why the evidence was insufficient to support the conviction. In so doing we identified four separate factors that were *not* established by the evidence in *McKeon*. We wrote as follows:

> Accepting everything Donna said as true, the evidence does not warrant a finding that lascivious intent of the defendant has been shown beyond a reasonable doubt. From Donna's description of what happened, there is no evidence that the defendant was sexually aroused; *that he made any gestures toward himself or to her;* that he made any improper remarks to her; or that he asked her to do anything wrong.

*Id.* (Emphasis added.) The four factors identified in *McKeon* are set forth in the disjunctive. This means that proof of any one factor can be sufficient to uphold a conviction under the statute.

*Breeding* says nothing that alters this conclusion. There, as in *McKeon*, the evidence failed to establish any of the requisite factors.

■ In the instant appeal, the evidence shows that Campbell gestured towards himself four times and that he did so both before and after pulling down his pants. He placed himself in a position where he could be seen, made sure by gesturing that he was seen by an 8-year-old child, then proceeded to undo his pants and push them to his knees in full view of his infant victim. Finally, he beckoned again to the child once his pants were down. In our opinion, this evidence is sufficient to show that he intentionally exposed himself and that he did so with lascivious intent.

In light of the foregoing, Campbell's conviction will be affirmed.

*Affirmed.*