COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued at Alexandria, Virginia


RICHARD ABNER SIMON
                                                            OPINION BY
v.       Record No. 0909-10-4                       JUDGE LARRY G. ELDER
                                                            MAY 3, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

Jason S. Rucker (Rucker & Rucker, on brief), for appellant.

Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Richard Abner Simon (appellant) appeals from his jury trial conviction for indecent

liberties in violation of Code § 18.2-370. On appeal, he contends the trial court erred in refusing

to instruct the jury on indecent exposure, proscribed by Code § 18.2-387, as a lesser-included

offense. He also contends the evidence was insufficient to establish he acted with the lascivious

intent necessary to support his conviction. We hold the court did not err in refusing the proffered

instruction and that the evidence was sufficient to prove appellant acted with lascivious intent.

Therefore, we affirm the challenged conviction.

                                    I. BACKGROUND

        In the summer of 2009, K.K., a ten-year-old girl, attended a summer day camp with her

younger brother. Each weekday morning, K.K.'s father drove her and her brother to the parking

lot of a CVS drug store in Arlington, where they boarded the bus for camp. On Wednesday,

August 26, 2009, as K.K.'s father walked her and her brother from their car to the bus, K.K.

noticed a truck with the driver's door open parked two spaces away from her father's vehicle.

The parking space between father's vehicle and the truck was empty, and K.K. had a clear view of a man sitting in the truck's driver's seat. The man's body was turned toward his open vehicle door, and both his feet were on the asphalt surface of the parking lot. The man was wearing red shorts and had his legs "spread apart," and K.K. "saw his private coming out of . . . the inside edge of his shorts," neither "a lot [n]or a little" but "[s]ort of in the middle." K.K. did not say anything to her father at that time. That evening, however, she told her parents what had happened. Her father told her that if she saw the man again, she should be sure to tell him. Although K.K. did not see the man the next morning, Thursday, August 27, K.K.'s father spoke to the bus driver and "alerted [him] about [the] potential problem."

On Friday, August 28, K.K. saw the man and his truck again, parked in the same parking space he had been parked in previously. K.K. told her father "that that was him" before boarding the bus for camp. The bus driver, as a result of what K.K.'s father had told him, paid special attention to the man, writing down the license plate number of the man's truck, a description of the truck, and a description of the man himself. The bus driver then gave that information to K.K.'s father when he walked K.K. and her brother to the bus that morning. K.K.'s father said the man was wearing the same red shorts K.K. had told him the man had been wearing on Wednesday morning. K.K.'s father also watched the man's movements. He said that while the bus was parked perpendicular to the rear of his vehicle and the man's truck, he saw the man walk around to the passenger side of his truck and squat down to tinker with something on his truck. The man positioned himself so that his legs were spread facing the bus. K.K.'s father, who was standing near the front of the bus, couldn't see the man's entire body because it was obscured by the truck. K.K.'s father also observed that when the bus left, the man got back into his truck and drove away. At appellant's trial, K.K.'s father identified appellant as the driver of the vehicle.

- 2 -

K.K.'s father telephoned police and reported what had happened. On Saturday, August 29, 2009, father and K.K. met with Arlington County Police Officer Lawrence King. Based on what K.K. and her father reported, Officer King, dressed in plain clothes, went to the CVS parking lot on the morning of Monday, August 31, 2009, before the bus arrived. He spotted the truck K.K. and her father had described, and he watched as it circled the parking lot "about three times" while "[the driver] was looking in the direction [from which] the bus [eventually came]." "As soon as the bus [left]," the truck drove away, as well. Officer King followed the truck, observed it commit a traffic infraction, and conducted a traffic stop. When Officer King inquired of the driver, appellant, why he was in the area, appellant said he was tired and was looking for a place to take a nap before he had to go to work at 9:00 a.m. Appellant admitted having been in the area on both August 26 and August 28, 2009, and he claimed his truck had "had a malfunction."

Appellant was wearing brown pants and a collared shirt when Officer King stopped him. Because Officer King wanted to see if he could locate the red shorts K.K. and her father had described, he asked for and received permission to search appellant's truck, which contained "a lot of clutter." A pair of red shorts with a hole in the crotch the size of a half-dollar or golf ball was found completely concealed beneath the driver's side floor mat. Two pornographic DVDs were found beneath the driver's seat. The cover of one of the DVDs displayed a semi-nude person, who was of indeterminate age but young in appearance, and referred, *inter alia*, to "just turned teen[s]." On the driver's side of a tool box in the truck's bed, police found a pornographic magazine which was titled "Best of Barely Legal" and depicted numerous semi-nude young women who were portrayed as being 18 years old.

Detective James Stone, a member of Arlington County's special victims unit, spoke to appellant after advising him of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Appellant claimed he found the magazine in a dumpster and kept it out of curiosity. When asked about the DVDs, he responded merely that they had been in the truck for a while. When Detective Stone inquired about the red shorts, appellant said he threw them under the mat because they were wet, then admitted he put them under the mat when he was pulled over, "and then went back to the [previous] story." Appellant told Detective Stone that he worked in Washington, DC, at the time of his arrest. Detective Stone determined appellant resided on Stringfellow Road in Fairfax County, which was almost sixteen miles from the CVS parking lot.

At trial, appellant's counsel asked K.K. on cross-examination whether the man had looked at her the day she saw his "private." K.K. testified, "I'm not absolutely sure, but I think I remember him looking at me once or twice, you know, glancing up," on both of the days she saw him. On re-direct, the following colloquy took place:

> [Prosecutor]: . . . You said you think that he may have looked at you once or twice. I think you said he was glancing up. Did you mean that he was glancing up or you were glancing up?
>
> [K.K.]: He was glancing up. I had looked at him once and I kept going but it was kind of hard not to look back at him once. So I looked back once and then I continued on my way.
>
> [Prosecutor]: When you said he was glancing up, where was he looking?
>
> [K.K.]: I don't remember but it seemed to me like he was glancing up like he was looking up at me from a different place he was looking originally.

On cross-examination of Officer King, appellant's counsel elicited testimony from him that when K.K. and her father gave their statements to him about what had happened on August 26 and 28, 2009, K.K. told him appellant did not look at her during the incident that occurred on August 26.

The red shorts were admitted into evidence, and the jurors were permitted to examine them. The shorts appeared to contain numerous small cuts in the fabric, and the appearance of

- 4 -

the hole in the crotch of the shorts permitted the inference that the hole did not result from general wear and tear but rather that the crotch, too, had been intentionally cut to create the hole.

At the close of the Commonwealth's case, appellant moved to strike, contending, *inter alia*, that the evidence was insufficient to prove he acted with lascivious intent. The trial court denied the motion, concluding the Commonwealth had presented a prima facie case. Appellant chose to present no evidence and renewed his motion to strike, which the trial court again denied.

Appellant proffered a jury instruction on indecent exposure, averring that offense is lesser included in the charged offense of "statutory felony exposure to certain infants with lascivious intent." The Commonwealth responded that although a footnote in Ashby v. Commonwealth, 208 Va. 443, 158 S.E.2d 657 (1968), implies indecent exposure is a lesser-included offense, the intent required to establish each offense is different. The trial court agreed with the Commonwealth, ruling that indecent exposure is not lesser included in indecent liberties, and refused appellant's proffered instruction.

The jury found appellant guilty of the charged offense. After sentencing, appellant noted this appeal.

## II. ANALYSIS

### A. ENTITLEMENT TO JURY INSTRUCTION

Settled principles provide that an accused is entitled to a jury instruction not only on the offense charged but also on any offenses lesser included in the offense charged, Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000), as long as the proffered instruction finds support in the evidence, Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001). Here, appellant contends the trial court erred in ruling that the crime of indecent exposure was not lesser included in the indecent liberties offense with which he was charged and, thus, that the trial court erred in refusing to give his proffered instruction on indecent

exposure.[1]  Appellant contends the Supreme Court of Virginia resolved this issue in Ashby, 208 Va. 443, 158 S.E.2d 657, and Hewitt v. Commonwealth, 213 Va. 605, 194 S.E.2d 893 (1973).

We hold the language upon which appellant relies in these cases is not controlling. Although the doctrine of *stare decisis* serves as a cornerstone in American jurisprudence, "*[s]tare decisis* cannot be properly applied without . . . 'distinguish[ing] an opinion's holding from its *dicta*.'" Newman v. Newman, 42 Va. App. 557, 566, 593 S.E.2d 533, 538 (2004) (en banc) (quoting U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., 508 U.S. 439, 463 n.11, 113 S. Ct. 2173, 2186 n.11, 124 L. Ed. 2d 402, 423 n.11 (1993)).  *Dictum*, defined as language in an opinion that is "not responsive to the question presented and . . . not necessary to a disposition of the case," Deiter v. Commonwealth, 205 Va. 771, 775, 139 S.E.2d 788, 791 (1965), "cannot 'serve as a source of binding authority in American jurisprudence,'" Newman, 42 Va. App. at 566, 593 S.E.2d at 538 (quoting United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (en banc)).

In Ashby, the Court was presented with two issues for decision, whether indecent exposure is a lesser-included offense of sodomy and whether a conviction for indecent liberties barred a subsequent prosecution for sodomy arising out of the same incident.  208 Va. at 445-46, 158 S.E.2d at 658-59.  The Court answered both questions in the negative.  Id.  In a footnote, the Court stated that indecent exposure was a lesser-included offense of indecent liberties and that if, contrary to the Court's express holding, indecent exposure *were* lesser included in sodomy, the defendant's prior conviction for indecent liberties would have prevented a subsequent conviction for indecent exposure at the sodomy trial.  Id. at 445 n.3, 158 S.E.2d at 658 n.3.  Thus, the

---

[1] The Commonwealth concedes that the record contains evidentiary support for the instruction if the offense is lesser included.

Court's comment about whether indecent exposure was lesser included in the offense of indecent liberties was non-binding *dictum*.[2]

In Hewitt, the issue presented was whether the crime of unauthorized use of a vehicle was lesser included in the crime of larceny. 213 Va. at 605, 194 S.E.2d at 893. In holding unauthorized use was a lesser-included offense, the Court observed that the essential difference between the two crimes was one of intent, and it cited several examples of greater and lesser-included crimes which differed only as to the element of intent. Id. at 606-07, 194 S.E.2d at 894-95. Citing Ashby, the Court listed indecent liberties and indecent exposure as greater and lesser crimes. Hewitt, 213 Va. at 607, 194 S.E.2d at 895. Again, because this language in Hewitt was *dictum*, it is not binding on this Court.

Thus, we must conduct our own analysis of whether indecent exposure as proscribed by Code § 18.2-387 is lesser included in the species of the indecent liberties offense charged in the indictment, proscribed by Code § 18.2-370(A)(1).

"Whether one offense is a lesser included offense of the other depends upon whether the elements of the greater offense necessarily include all elements of the lesser." Fontaine v. Commonwealth, 25 Va. App. 156, 164, 487 S.E.2d 241, 245 (1997), overruled on other grounds by Edwards v. Commonwealth, 41 Va. App. 752, 765, 589 S.E.2d 444, 450 (2003) (en banc). "[W]here every commission of the [claimed] greater offense is also a commission of the

---

[2] The versions of the statutes at issue—although not identical to the ones applicable in the instant case, see infra pp. 8-9 & n.3—were, in relevant part, substantially the same at that time, see Ashby, 208 Va. at 445 n.4, 158 S.E.2d at 659 n.4 (quoting former Code § 18.1-214 (Repl. Vol. 1960), which defined the offense of indecent liberties); 1960 Va. Acts ch. 233 (amending Code § 18.1-236, predecessor to present Code § 18.2-387, which contained a definition of the crime of indecent exposure identical to the one in effect today); id. (defining "obscene" in Code § 18.1-227, as used in Code § 18.1-236, the indecent exposure statute, in substantially the same way the statutory scheme defines "obscene" today). However, the statutory scheme did not then and does not now define "lascivious" as used in the indecent liberties statute, and the Supreme Court did not define that term until 1970, see McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970), after its decision in Ashby.

[claimed] lesser offense" *and* the claimed lesser offense "'is composed entirely of elements that are also elements of the [claimed] greater offense,'" "a lesser[-included] offense may be deemed to exist." Sanchez v. Commonwealth, 32 Va. App. 238, 241, 527 S.E.2d 461, 463 (2000) (quoting Kauffmann v. Commonwealth, 8 Va. App. 400, 409, 382 S.E.2d 279, 283 (1989)). "An offense is not a lesser-included offense of a charged offense unless *all* its elements are included in the offense charged." Dalton, 259 Va. at 253, 524 S.E.2d at 862 (emphasis added). "An offense is not a lesser included offense of another if each offense contains an element that the other does not." Walker v. Commonwealth, 14 Va. App. 203, 206, 415 S.E.2d 446, 448 (1992). "In applying the test, the offenses are examined in the abstract," with regard to their elements, "rather than with reference to the facts of the particular case under review." Seibert v. Commonwealth, 22 Va. App. 40, 45, 467 S.E.2d 838, 841 (1996).

The portion of Code § 18.2-370 under which appellant was charged and convicted provides in relevant part as follows:

> A. Any person 18 years of age or over, who, with lascivious intent, knowingly and intentionally commits any of the following acts with any child under the age of 15 years is guilty of a Class 5 felony:
>
> (1) Expose[s] his or her sexual or genital parts to any child to whom such person is not legally married or propose[s] that any such child expose his or her sexual or genital parts to such person . . . .

The indecent exposure statute, Code § 18.2-387, provides in relevant part that "[e]very person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, . . . shall be guilty of a Class 1 misdemeanor."

A comparison of the elements of these crimes confirms that indecent exposure is not lesser included in the indecent liberties offense charged in the indictment. First, the offenses

require different intents.  Code § 18.2-370(A)(1) requires an "exposure" "with lascivious intent."

"Lascivious" as used in Code § 18.2-370, although not defined in the code, has been held to

"'describe[] a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of

inciting sexual desire and appetite.'"  Campbell v. Commonwealth, 227 Va. 196, 199, 313 S.E.2d

402, 404 (1984) (quoting McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284

(1970)).  Code § 18.2-387 requires an "intentionally" "obscene" "exposure."[3]  "Obscene" as

used in Code § 18.2-387 is defined in relevant part as

> that which, considered as a whole, has as its dominant theme or
> purpose an appeal to the prurient interest in sex, that is, a shameful
> or morbid interest in nudity, sexual conduct, sexual excitement,
> excretory functions or products thereof or sadomasochistic abuse,
> and which goes substantially beyond customary limits of candor in
> description or representation of such matters and which, taken as a
> whole, does not have serious literary, artistic, political or scientific
> value.

Code § 18.2-372.[4]

Comparing these two definitions, we conclude that although every exposure made with

lascivious intent in violation of Code § 18.2-370(A)(1) may also be an intentionally obscene

exposure in violation of Code § 18.2-387, the converse is not true because the obscenity element

of indecent exposure is broader than the mere lascivious desire for "sexual indulgence."  Thus,

the claimed lesser offense of indecent exposure is not "'composed entirely of elements that are

---

[3] Code § 18.2-387 also proscribes "intentionally . . . obscene display[s]."  Based on the legal posture of this case, we confine our analysis to the portion of the statute proscribing exposures.

[4] This definition of "obscene" has been in effect since 1975.  See 1975 Va. Acts chs. 14, 15.  The definition of "obscene" in effect from 1960 until 1975 was substantially the same for purposes of the instant analysis, having defined "obscene" as "that which considered as a whole has as its dominant theme or purpose an appeal to the prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters."  1960 Va. Acts ch. 233 (codified at § 18.1-227 (1960 Repl. Vol.)).  See discussion supra note 2.

also elements of the [claimed] greater offense'" of indecent liberties. Sanchez, 32 Va. App. at 241, 527 S.E.2d at 463 (quoting Kauffmann, 8 Va. App. at 409, 382 S.E.2d at 283).

Second, the statutes' age-related elements differ in critical respects. Although an accused who is 18 or older, as required for a conviction under the indecent liberties statute, falls within the ambit of the indecent exposure statute's reference to "[e]very person," the reference of the claimed lesser-included offense to "every person" is significantly broader. In essence, the indecent liberties statute requires proof that the perpetrator was 18 or older whereas the indecent exposure statute permits a conviction upon proof that the perpetrator was 18 or older *or* under 18. Also, the indecent liberties statute requires proof that the victim was under 15 and not married to the perpetrator, whereas the indecent exposure statute does not require proof of any particular victim at all, only that the act occurred "in any public place, or in any place where others are present." Thus, the indecent exposure statute, the claimed lesser-included offense, is significantly broader on this element, as well, specifying no marital status requirement and no age restriction whatever for any potential victim. In short, as to the age-related elements, as well, indecent exposure is not lesser included in indecent liberties because "all [the] elements [of the claimed lesser-included offense]" are not "included in the offense charged." See Dalton, 259 Va. at 253, 524 S.E.2d at 862.

As a result, we conclude the trial court did not err in refusing to instruct the jury on the crime of indecent exposure.

### B. SUFFICIENCY OF THE EVIDENCE TO PROVE LASCIVIOUSNESS

On appeal of a criminal conviction, we must view the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to the Commonwealth, the party prevailing below. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

As quoted above, "lascivious" as used in Code § 18.2-370 "describes a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." McKeon, 211 Va. at 27, 175 S.E.2d at 284. Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements. Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent. Canipe v. Commonwealth, 25 Va. App. 629, 645, 491 S.E.2d 747, 754 (1997). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

In McKeon, the Court held the evidence was insufficient to prove beyond a reasonable doubt that the defendant exposed himself with lascivious intent, noting "there is no evidence that the defendant was sexually aroused; that he made any gestures toward himself or to [the victim]; that he made any improper remarks to her; or that he asked her to do anything wrong." 211 Va. at 27, 175 S.E.2d at 284. Subsequently, the Court held that proof of any one of these factors may be sufficient to prove lascivious intent. See Mason v. Commonwealth, 49 Va. App. 39, 50, 636 S.E.2d 480, 485 (2006) (citing Viney v. Commonwealth, 269 Va. 296, 300, 609 S.E.2d 26, 28 (2005); Campbell v. Commonwealth, 227 Va. 196, 200, 313 S.E.2d 402, 404 (1984)).

Citing McKeon, appellant contends on brief that, "[g]enerally, in order to prove lascivious intent, there must be proof that the male defendant was in an erect state or that the defendant made specific gestures or remarks to call attention to the exposed genitalia." We

disagree. Although the Supreme Court recognized an absence of these types of evidence in McKeon and held the record failed to support the defendant's conviction, the Court has never held that these are the *only* methods by which proof of lascivious intent may be established. See Viney, 269 Va. at 300, 609 S.E.2d at 28 ("We enumerated evidence that *may* prove lascivious intent [in McKeon] . . . ." (emphasis added)); Mason, 49 Va. App. at 50, 636 S.E.2d at 485 ("[T]he Court has not held that proof of one of the four factors is a prerequisite to a finding of lascivious intent."). Lascivious intent, like any intent, may be proved with any evidence that establishes the requisite intent beyond a reasonable doubt. Whether the defendant was aroused and what, if anything, the defendant conveyed or attempted to convey to the victim is evidence relevant to the issue of intent, but these are not the only methods of establishing the defendant's intent.

Here, appellant was charged for the act he committed on or about Wednesday, August 26, 2009. The evidence, viewed in the light most favorable to the Commonwealth, established that this was the first of three mornings within a week's time on which appellant, who resided on Stringfellow Road in Fairfax County and worked in Washington, DC, located to the east of his home, was seen almost sixteen miles to the west of his home, outside a particular CVS in Arlington. On that date, K.K. saw appellant sitting in the driver's seat of his truck with the door open. He was facing the vehicle she was exiting, both his feet were on the ground, and his legs were "spread apart." He was wearing red shorts, and from "the *inside* edge of his shorts," she "saw his private coming out," neither "a lot or a little" but "[s]ort of in the middle." (Emphasis added).

On Friday, August 28, appellant was in the same location at the same time, wearing the same red shorts. K.K., who had already reported Wednesday's incident to her father, paid less attention to appellant that morning, but her father watched him more carefully. Father, who was

standing near the steps of the camp bus, observed that after K.K. boarded the bus, appellant walked to the rear corner of his truck. Father could not see appellant's torso, but he could tell appellant was squatting down with his legs spread in a position facing the bus. The man appeared to be "tinker[ing]" with something on his truck, but he left as soon as the bus departed.

On Monday, August 31, appellant was again at the CVS parking lot in his truck, and he circled the parking lot three times while "looking in the direction [from which] the bus [eventually came]." "[A]s soon as the bus [drove off]," appellant "d[r]ove off," as well. Appellant was dressed in pants and a collared shirt that morning and reported he had to be at work in Washington, DC, at 9:00 a.m. However, he still had the red shorts in his vehicle and attempted to hide them beneath the driver's mat when stopped by police. An examination of the shorts following a consensual search of the truck revealed a golf ball-sized hole in the crotch. From an examination of the shorts, the jury could have found that the hole was not caused by ordinary wear and tear and, instead, that appellant had intentionally cut the hole. Finally, appellant had in his truck a pornographic DVD labeled as depicting "just turned teen[s]" and a pornographic magazine labeled as depicting "barely legal" young women.

In sum, appellant (1) was present at the bus stop, which was more than fifteen miles from his home and even farther from his place of work, three times in one week, remaining there only as long as the bus was there; (2) faced first K.K. and then the bus while wearing the intentionally modified shorts and spreading his knees on two of those occasions; (3) hid the shorts when stopped by the police; and (4) had present in his truck when he was stopped on August 31 a pornographic magazine and DVDs purporting to depict young and "barely legal" teens. The totality of this evidence supported a finding not only that appellant purposefully exposed himself to K.K. in the CVS parking lot on August 26, at which time she saw his penis protruding from

- 13 -

the intentionally cut hole in his shorts, but also that he did so with an eagerness to indulge himself sexually, thereby proving the requisite lascivious intent.

The cases upon which appellant relied at trial are distinguishable on their facts. In both McKeon and Breeding, the defendant's genitals were exposed on a single occasion, and the Court held reasonable doubt remained regarding whether each defendant "knowingly and intentionally exposed himself with lascivious intent." McKeon, 211 Va. at 27, 175 S.E.2d at 284; see Breeding v. Commonwealth, 213 Va. 344, 344-45, 192 S.E.2d 807, 807 (1972). In McKeon, the defendant told the victim, a young neighbor whom he had paid to go to the store for him, "to 'turn around'" while he stood, smiling, about 35 feet away from her with his robe open. The Court held that evidence, absent something more, such as an indication that the defendant was sexually aroused, gestured toward himself or to her, made any improper remarks, or asked the child to do something wrong, was insufficient to prove the requisite intent. McKeon, 211 Va. at 27, 175 S.E.2d at 284. In Breeding, the defendant stopped his car, in which he sat with his trousers unbuckled and unzipped, and when he asked two young girls for directions, "they saw what they referred to as his 'privacy." 213 Va. at 344, 192 S.E.2d at 807. As soon as the defendant obtained the directions he requested, he left, and the record contained no evidence that he was sexually aroused or that he made any suggestive remarks or gestures. Id. at 344-45, 192 S.E.2d at 807.

In appellant's case, by contrast, the evidence supported a finding that on two different occasions within a span of three days, appellant wore intentionally modified shorts, into the crotch of which he had cut a golf ball-sized hole. While wearing those shorts, he first exposed himself to a ten-year-old girl and then, two days later, placed himself on display within view of a school bus he had just seen the same young girl board. He also returned on a third day, although not wearing the modified shorts. He circled the parking lot until the bus came and left as soon as

it departed.  When he was pulled over by the police moments later, he hid the shorts, which were still in his vehicle, beneath the floor mat, and police found two pornographic DVDs, one depicting "almost turned teen[s]," hidden beneath the driver's seat.  This evidence supported a finding that appellant both intentionally exposed himself and was eager to indulge himself sexually.

## III.

For these reasons, we hold that the court did not err in refusing the proffered instruction and that the evidence was sufficient to prove appellant acted with lascivious intent.  Therefore, we affirm the challenged conviction.

<u>Affirmed.</u>