COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia


WILLIAM THADDEUS PERRY

MEMORANDUM OPINION[*] BY
v.        Record No. 0154-15-1        JUDGE MARLA GRAFF DECKER
DECEMBER 29, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

(Tyrone C. Johnson, on brief), for appellant.  Appellant submitting
on brief.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


William Thaddeus Perry appeals his conviction for misdemeanor resisting arrest in

violation of Code § 18.2-479.1.  He argues that the evidence is insufficient to support his

conviction because it fails to prove that he intended to resist arrest by fleeing, as required by the

statute.  We hold that the evidence, viewed under the proper legal standard, is sufficient to prove

the required intent, and we affirm the appellant's conviction.[1]

I.  BACKGROUND

On the evening of February 4, 2014, the appellant had dinner with his girlfriend, Holly

George, and several others at a residence in the City of Hampton.  After dinner, the appellant

said he would kill himself if George did not leave with him.  He then had a physical altercation

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The appellant was also convicted of attempted malicious wounding in violation of Code
§§ 18.2-26, 18.2-51.  That conviction is not before this Court.

with her and three others at the residence who tried to calm him down. After the men successfully restrained the appellant, one of the individuals called the police.

Senior Patrol Officer Christopher Mathey of the Hampton Division of Police responded to the residence. Officer Mathey arrested the appellant for multiple counts of attempted malicious wounding. After a brief trip to the hospital for medical treatment for the appellant, Mathey took him to "adult lockup" at the jail. Mathey testified that "[u]p until that point of arriving at lockup [the appellant] was relatively cooperative with [his] request[s] and generally with [the] investigation," although he asked repeatedly whether the crime for which he had been arrested was a felony or misdemeanor. Mathey told the appellant that he would receive more specific information about the charges when he appeared before a magistrate.

The officer described the series of events that occurred once he arrived at the lockup with the appellant. Mathey stopped his police car outside "what's commonly called a sally port[,] where [law enforcement] vehicles are parked within so that prisoners can be turned over to deputies." Two police vehicles were already parked inside the sally port. Consequently, Officer Mathey parked outside the structure, adjacent to the gate. Mathey got out of his police car and secured his weapon and ammunition in the trunk. The officer then got the appellant out of the car and took him to the call box at the gate in order to obtain entry to the facility through the sally port. The appellant's handcuffed hands were positioned in front of his body, where they had been placed while he was at the hospital in order to facilitate his medical treatment.

Officer Mathey paged the deputies on the call box while standing just outside the sally port gate. At that time, the officer had his left hand on the appellant's right bicep as the appellant stood between him and the gate. When the gate began to rise and was about two feet above the ground, the appellant "made a quick action," turning left and away from the officer "in an

- 2 -

attempt to break [his] grasp." The appellant succeeded in breaking from Mathey's grasp, although the officer "immediately regained [it] as [he] grabbed on to [the appellant's] jacket."

Mathey provided more details regarding the appellant's actions. According to the officer, before he grabbed onto the appellant's jacket, the appellant "made steps . . . away from the sally port gate." Mathey indicated further that the appellant took "a few short steps as he began to attempt to flee." The officer caught the appellant by his jacket, placed his right hand on the appellant's left bicep, and "turned him back towards the gate." At that point, the appellant again was between the officer and the gate. The gate had opened enough for Mathey to take the appellant inside, so the officer "forc[ed] [the appellant] to walk backwards" into that area before he attempted to gain "more positive control" of him. According to Mathey, he took those steps because of the appellant's "very overt action of trying to flee from [his] custody." Mathey reiterated that the appellant's actions "very specific[ally]" indicated that he was "trying to break [Mathey's] custody."

The officer testified that throughout the incident, he repeatedly told the appellant to stop resisting. When he finally was able to push the appellant through the gate into the sally port, the appellant responded, "[O]kay, you got me, you got me."

The appellant was indicted for the misdemeanor offense of "intentionally prevent[ing] or attempt[ing] to prevent a law-enforcement officer from lawfully arresting him," in violation of Code § 18.2-479.1. In a bench trial, he argued that his "br[eaking] away" from custody "for a second" before the officer "grabbed him" again did not prove resisting arrest. The judge disagreed, convicting the appellant of resisting arrest and sentencing him to twelve months' incarceration, which the judge ordered to run concurrently with his sentence for attempted malicious wounding.

II. ANALYSIS

The appellant challenges the sufficiency of the evidence to prove that he acted with the requisite intent to resist arrest.[2] In our review of the issue, this Court considers "the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). "Viewing the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence].'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). We will affirm the judgment of the trier of fact unless it is "plainly wrong or without evidence to support it." Bolden, 275 Va. at 148, 654 S.E.2d at 586.

Critical to our analysis is that we do not substitute as the trier of fact, who was in the position to see and hear the witnesses as they testified, and to make credibility determinations. Redmond v. Commonwealth, 57 Va. App. 254, 265, 701 S.E.2d 81, 86 (2010). Consequently, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below. Id. Additionally, when reviewing a case, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387

---

[2] The sole assignment of error before the Court challenges only the sufficiency of the evidence to prove intent. To the extent that the appellant preserved this challenge below, we conclude *infra* that it is without merit. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (recognizing that "an appellate court may structure a decision upon an 'assuming but not deciding' basis"); cf. Podracky v. Commonwealth, 52 Va. App. 130, 134-35, 662 S.E.2d 81, 84 (2008) (applying Luginbyhl to assume without deciding that the appellant had standing and resolving the case based on the conclusion that his rights were not violated).

- 4 -

(2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the question is "whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson, 443 U.S. at 319). The trier of fact, not the appellate court, resolves conflicts in testimony, weighs the evidence, and "draw[s] reasonable inferences from basic facts to ultimate facts." Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319). It is under these well-established standards that we review the sufficiency of the evidence in this case.

Code § 18.2-479.1 provides that "[a]ny person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him" is guilty of a Class 1 misdemeanor. Code § 18.2-479.1(A). The statute further states, in pertinent part, that "[f]or purposes of this section, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when . . . the officer applies physical force to the person." Code § 18.2-479.1(B)(i).

The appellant characterizes the evidence as proving only that he turned and moved a few steps away from Officer Mathey. He argues that this evidence was insufficient to prove that he acted with the requisite intent to resist arrest as defined in Code § 18.2-479.1 because he did not protest his arrest verbally or "run away even though he might have done so." However, as this Court observed in Joseph v. Commonwealth, 64 Va. App. 332, 768 S.E.2d 256 (2015), "fleeing from a law-enforcement officer" under Code § 18.2-479.1 may be proved not only by headlong flight or "running away" but also by lesser "physical movement beyond the scope of the officer's immediate span of control." Id. at 341, 768 S.E.2d at 260. Consequently, the evidence was sufficient to support the conviction if it proved that the appellant *intentionally* attempted to avoid arrest by moving beyond Officer Mathey's "immediate span of control." Id.

"Intent is the purpose formed in a person's mind at the time an act is committed." Johnson v. Commonwealth, 53 Va. App. 79, 100, 669 S.E.2d 368, 378 (2008) (quoting Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). Whether the defendant had the required intent is generally a question for the trier of fact. Id. at 100-01, 669 S.E.2d at 378. A defendant's intent, by its very nature, may and often must be proved by circumstantial evidence. E.g., Simon v. Commonwealth, 58 Va. App. 194, 206, 708 S.E.2d 245, 251 (2011). Circumstantial evidence of intent may include a person's statements and conduct, including those "after the events that constitute the charged crime." Id. In determining intent, "[t]he fact finder . . . is entitled to draw inferences" from the facts proved to be true, "so long as the inferences are reasonable and justified." Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998). Additionally, the fact finder may infer that a person "intends the natural, probable consequences of his or her actions." Ellis v. Commonwealth, 281 Va. 499, 507, 706 S.E.2d 849, 853 (2011).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence . . . ." Holloway v. Commonwealth, 57 Va. App. 658, 665, 705 S.E.2d 510, 513 (2011) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). When a conviction is based on circumstantial evidence, that evidence must "exclude every reasonable hypothesis except that of guilt." Coleman, 226 Va. at 53, 307 S.E.2d at 876. This requirement "is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)). Whether a "hypothesis of

innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Id. (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997)).

In the instant case, the circumstantial evidence, viewed under the appropriate legal standard, was sufficient to prove that the appellant acted with the intent required to support his conviction for violating Code § 18.2-479.1. Officer Mathey arrested the appellant for multiple counts of attempted malicious wounding in response to a 911 call. Although the appellant was generally cooperative, he expressed concern over whether the charges were felonies or misdemeanors. The facts show that upon arrival at the adult lockup, the appellant was faced with his last potential opportunity to attempt an escape before entering the secure area of the jail, and the record supports the conclusion that the appellant intentionally took advantage of that opportunity.

Mathey, who was forced to park outside the secured sally port because it was occupied by other police vehicles, locked his firearm in the trunk of his police car before removing the appellant from the vehicle's passenger area. The appellant's hands were handcuffed in front of his body rather than behind it, providing him with better balance than he might otherwise have had. Mathey stood with the appellant in front of the sally port gate as he took steps to gain entry to the secure area of the facility in order to complete the formal arrest process. Mathey, who was unarmed and alone with the appellant, had a single hand on one of the appellant's biceps as he operated the call box to request entry.

This evidence supports the inference that the appellant was presented with a confluence of circumstances providing the last reasonable opportunity to attempt an escape. When the sally port gate had risen about two feet, not yet high enough to allow Mathey and the appellant to enter, the appellant "made a quick action and turned . . . away from [the officer]." Mathey

testified that the appellant's actions were an obvious attempt to escape from his grasp and that the appellant in fact succeeded in breaking free. The officer testified further that the appellant then "began to attempt to flee" by moving "away from the sally port gate."

As the appellant took a few steps away from the gate, Mathey was able to grab his jacket but not the appellant himself. While still holding onto the appellant's jacket, Mathey put his hand on the appellant's bicep, instructed him repeatedly to "stop resisting," and forced him to walk backward through the gate into the sally port. Officer Mathey explained that he moved the appellant backward toward the open gate before he was able to regain a good grip on the appellant's arm because of what he described as the appellant's "very overt action of trying to flee from [his] custody."

This evidence supports the reasonable inference that the appellant acted with the intent to flee, at the most opportune moment to do so, and that he would have continued his attempt if Officer Mathey had not grabbed his jacket to regain control of him. Additionally, as Mathey forcefully directed the appellant backward through the open gate, the appellant said, "[O]kay, you got me, you got me." The appellant's actions and statements, and the reasonable inferences flowing from them, including the timing of the appellant's decision to act, were sufficient to prove that he "intentionally . . . attempt[ed] to prevent" Officer Mathey from lawfully arresting him by moving beyond Mathey's "immediate span of control," albeit momentarily. See Code § 18.2-479.1; Joseph, 64 Va. App. at 341, 768 S.E.2d at 260.

The appellant contends that the evidence failed to exclude the reasonable hypothesis that he merely "wrested himself free of an uncomfortable or overbearing grasp upon his arm" and, therefore, did not act with the intent to flee. However, this hypothesis does not support reversal for two reasons. First, the appellant did not argue this hypothesis of innocence to the trial court. See Hudson, 265 Va. at 514, 578 S.E.2d at 786. At trial, he contended only that his "br[eaking]

- 8 -

away" from custody "for a second" before the officer grabbed him again was insufficient to prove the charged offense. Second, the evidence in the record does not support the appellant's hypothesis. See Emerson, 43 Va. App. at 277, 597 S.E.2d at 249. The evidence, to the contrary, supports the conclusion that the appellant intended to flee, broke from the officer's grasp, moved away from his immediate control, and would have traveled more than a few steps if Officer Mathey had not quickly managed to grab onto his jacket. The appellant's response upon being caught, "[O]kay, you got me, you got me," supports the finding that the only reasonable hypothesis flowing from the evidence was that he intended to flee.

## III. CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's finding that the appellant acted with the requisite intent to prove he resisted arrest as defined by Code § 18.2-479.1. Therefore, we affirm the conviction.

Affirmed.