COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chafin and Senior Judge Clements
Argued by teleconference


JERRY WILLIAM MCCOY
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0710-17-3                      JUDGE ROBERT J. HUMPHREYS
                                                    JULY 10, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Henry A. Vanover, Judge

J. Brent Fleming (Fleming Law Office, P.C., on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


On November 29, 2016, in the Circuit Court of Dickenson County (the "circuit court"),

appellant Jerry William McCoy was found guilty by a jury of one count of aggravated sexual

battery of a child less than thirteen years of age, in violation of Code § 18.2-67.3, and one count

of taking indecent liberties with a child less than fifteen years of age, in violation of Code

§ 18.2-370(A).  By final order entered on April 3, 2017, the circuit court imposed the jury's

recommended sentence of twelve years in prison for sexual battery.  Pursuant to Code

§ 18.2-210, the circuit court imposed an additional sentence of three years in prison, with all

three years suspended on the condition that McCoy be placed on the terms and conditions of

post-release supervision.  The circuit court also sentenced McCoy to five years in prison for his

taking indecent liberties with a child conviction, with one year suspended.  On appeal, McCoy

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

argues that the circuit court erred in denying his motion to strike the Commonwealth's evidence and in denying his motion to dismiss the case because the evidence was insufficient.

Taken in the light most favorable to the Commonwealth, the evidence is that during the relevant time, four-year-old E.J.M. lived with her aunt and uncle, Tessie and Jerry Junior, and two older cousins. E.J.M.'s paternal grandparents, Mary McCoy ("Mary") and the appellant, Jerry William McCoy ("McCoy"), lived one house away. After school and while Tessie and Jerry Junior worked, E.J.M. and her cousins stayed at their grandparent's home. At some point, Tessie and Jerry Junior adopted E.J.M.

One evening in March of 2015, E.J.M., Tessie, and Mary were sitting at the kitchen table in E.J.M.'s family home, talking. Mary teased E.J.M. stating, "Papaw Jerry's your favorite, ain't [sic] he." E.J.M. responded, "[n]o he's not." When Mary said, "[y]eah, he's your favorite," E.J.M. responded, "[n]o he's not, he touches my cookie." E.J.M. referred to her "vaginal area" as her "cookie." Tessie "knew exactly what [E.J.M.] was talking about" because E.J.M. did not have another name for her vaginal area. At that point, Tessie sent E.J.M. to her room and talked with E.J.M. in private. E.J.M. told Tessie that "[McCoy] would just stick his hands down her pants and squish her cookie." E.J.M. refused to talk to her grandmother, Mary, about McCoy's actions. When Mary attempted to talk with E.J.M. about it, E.J.M. put her head down and started crying.

After E.J.M. reported McCoy's abuse to her family members, Tessie noticed that E.J.M. "was a little more rebellious towards adults" and "really didn't want to do what they asked." Despite being "potty trained for a long time," E.J.M. started having "accidents." Tessie also observed E.J.M. acting out sexually. On one occasion, Tessie walked into E.J.M.'s bedroom and witnessed E.J.M. "with her hand down her panties . . . touching herself." When Tessie asked E.J.M. to stop, E.J.M. responded "it don't feel like it did when Papaw Jerry done it." Also,

during a forensic interview, E.J.M. told investigators that when McCoy touched her "cookie," it "hurt," "tickled," and "made her mad."

Tessie told her husband, Jerry Junior, about E.J.M.'s report. Jerry Junior subsequently confronted McCoy and asked him if E.J.M. was telling the truth. Although McCoy initially denied any wrongdoing, McCoy eventually admitted to touching E.J.M. "twice outside the clothes" but insisted that "he didn't go inside of her clothes." Jerry Junior did not discuss the situation further with McCoy and ceased contact with McCoy.

On May 5, 2015, a grand jury indicted McCoy on two counts of aggravated sexual battery of a child and two counts of taking indecent liberties with a child.[1]

Also on May 5, 2015, Department of Social Services Investigator Timothy Powers and Investigator Scott Stanley ("Officer Stanley") of the Dickenson County Sheriff's Office went to McCoy's home and asked to speak with him. After being told that "he was free to leave at any time" and that "he didn't have to answer any questions if he didn't want to[,]" McCoy agreed to make a statement.

During the interview, which was recorded, McCoy admitted to touching E.J.M.'s vaginal area, twice. McCoy also demonstrated how he touched E.J.M. on Officer Stanley's arm. McCoy told Powers and Officer Stanley that "he got caught up in the excitement, got caught up in the moment. [E.J.M.] was sitting in his lap. They were watching cartoons. Before he realized what was going on, he got caught up in the moment and touched her vagina twice." Officer Stanley placed McCoy under arrest after the interview.

---

[1] The Commonwealth *nolle prossequied* the two original charges against McCoy for taking indecent liberties with a child. However, on September 12, 2016, the Commonwealth obtained a second indictment charging McCoy with two counts of taking indecent liberties with a child less than fifteen years of age, in violation of Code § 18.2-370.1. Later, on September 20, 2016, the Commonwealth filed a motion to amend counts one and two of the indictment to reflect a new offense date range.

A two-day jury trial commenced on November 28, 2016. There, Tessie, Mary, and Jerry Junior testified to the foregoing and the jury listened to a recording of McCoy's statements to Investigators Powers and Stanley, which was admitted into evidence. McCoy moved to strike the Commonwealth's evidence at the conclusion of the Commonwealth's case-in-chief. McCoy argued that the Commonwealth failed to prove that McCoy acted with the requisite intent for either sexual battery of a child or taking indecent liberties with a child. The circuit court denied McCoy's motion to strike, finding that intent was a determination for the jury to make.

McCoy testified in his own defense and admitted that he touched E.J.M.'s vaginal area, but characterized his actions as an "accident." McCoy stated that while he and Mary babysat the grandchildren, E.J.M. sat on the couch with him to watch cartoons. McCoy stated that he covered E.J.M. with a thick blanket because she was cold. According to McCoy, E.J.M. then asked him to rub her legs and did so while watching cartoons. McCoy stated that after a few minutes, E.J.M. stated "stop it, Papaw, stop it, Grandpa[,]" and he realized that his "hand had slipped off her leg" and "rubbed her vagina, twice." McCoy testified that because E.J.M. was covered with a thick blanket, E.J.M. "thought that [he] was touching her . . . vagina on the inside of her pants[.]"

McCoy denied "enjoying" touching E.J.M., being sexually aroused at the time, or "saying any bad words" to E.J.M. McCoy also denied having the intent to "arouse [himself] or [E.J.M.] when . . . rubbing her leg."

McCoy sought to explain his statements and actions to the jury by testifying that he suffered a concussion and "brain damage" following a car accident in the 1970s. McCoy testified that because of the accident, he was forgetful and sometimes had difficulty expressing himself. However, Mary testified that she did not notice any difference in McCoy's mental state following the accident. Mary also stated that McCoy was "very good with words" and did not

- 4 -

have trouble articulating or expressing himself. According to Mary, McCoy helped manage the household finances and checking account.

After McCoy rested, the Commonwealth called Mary as a rebuttal witness. Mary testified that she had the opportunity to speak with McCoy about the incident and the allegations against him on several occasions. Mary testified that, during one of the conversations, she asked McCoy if he touched E.J.M.'s vagina while they were sitting on the couch. According to Mary, "[h]e said, just by picking her up and putting her in his lap." Mary also testified that McCoy "told [her] to agree with his lawyer" in court.

At the conclusion of all of the evidence, McCoy renewed his motion to strike, which the circuit court denied. The jury subsequently found McCoy guilty of one count of aggravated sexual battery of a minor and one count of taking indecent liberties with a child. However, the jury also found McCoy not guilty of the other two charges against him—additional charges of sexual battery of a minor and taking indecent liberties with a child. This appeal follows.

McCoy asserts that the circuit court erred in denying his motion to strike and motion to dismiss the case "because the evidence was insufficient." "When the sufficiency of the evidence to support a conviction is challenged on appeal, we must view the evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Severance v. Commonwealth, 67 Va. App. 629, 647, 799 S.E.2d 329, 338 (2017) (citing Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*)). "'The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.'" Clark v. Commonwealth, 30 Va. App. 406, 410, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)). "We do not determine whether we would have convicted the defendant, but whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cocke v. Commonwealth, 68 Va. App. 11,

14, 801 S.E.2d 427, 429 (2017) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003)).

Code § 18.2-67.3, the aggravated sexual battery statute, requires proof that the accused sexually abused the victim. Sexual abuse is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person . . . ." Code § 18.2-67.10(6). McCoy was also convicted of taking indecent liberties with a child less than fifteen years of age, in violation of Code § 18.2-370(A). That statute requires proof of "lascivious intent." Our Supreme Court has defined "lascivious" for purposes of Code § 18.2-370 as "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." Dietz v. Commonwealth, 294 Va. 123, 136, 804 S.E.2d 309, 315 (2017) (citation omitted).

"'Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact.'" Abdo v. Commonwealth, 64 Va. App. 468, 475, 769 S.E.2d 677, 680 (2015) (quoting Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991)). "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements.'" Vincent v. Commonwealth, 276 Va. 648, 652-53, 668 S.E.2d 137, 140 (2008) (quoting Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)). "'Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof.'" Austin v. Commonwealth, 60 Va. App. 60, 66-67, 723 S.E.2d 633, 636 (2012) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

McCoy argues that the Commonwealth failed to prove the requisite intent to sustain his convictions for both sexual battery of a child and taking indecent liberties with a child. In

support, McCoy primarily relies upon two cases—Viney v. Commonwealth, 269 Va. 296, 609

S.E.2d 26 (2005) and McKeon v. Commonwealth, 211 Va. 24, 175 S.E.2d 282 (1970).  Based on

these cases, McCoy argues that the Commonwealth must prove lascivious intent, and, by

extension the intent for sexual battery, by showing one of the following factors:  "(1) that the

defendant was sexually aroused; (2) that the defendant made gestures toward himself or to the

child; (3) that the defendant made improper remarks to the child; or (4) that the defendant asked

the child to do something wrong."  Viney, 269 Va. at 300, 609 S.E.2d at 28 (citing McKeon, 211

Va. at 27, 175 S.E.2d at 284).  McCoy notes that our Supreme Court has concluded that the four

factors listed above "are set forth in the disjunctive" meaning that "proof of any one factor can

be sufficient to uphold a conviction under" Code 18.2-370.  Id. (quoting Campbell v.

Commonwealth, 227 Va. 196, 200, 313 S.E.2d 402, 404 (1984)).

Relying upon Viney and McKeon, McCoy argues that he explicitly denied the sort of

enumerated conduct from which the Commonwealth could prove lascivious intent.  Specifically,

McCoy points out that he testified at trial that he was neither aroused nor sexually gratified at the

time of the touching and argues that there was no evidence that he made any gestures towards

himself or E.J.M., that he made any improper remarks to E.J.M., or that he asked E.J.M. to do

something wrong.  McCoy argues that the actual evidence presented and the inferences from it

do not prove any lascivious intent.  McCoy subsequently asks this Court to apply his argument as

to lascivious intent "to the language stated in [Code] § 18.2-67.3 requiring sexual abuse" because

the definitions are "substantially similar."

We decline McCoy's invitation.  Regarding lascivious intent, McCoy is mistaken that

proof of one of the specific factors enumerated in Viney and McKeon is required to prove

lascivious intent, much less the intent for sexual battery.  "Although the Supreme Court

recognized an absence of these types of evidence in McKeon and held the record failed to

- 7 -

support the defendant's conviction, the Court has never held that these are the *only* methods by which proof of lascivious intent may be established." Simon v. Commonwealth, 58 Va. App. 194, 207, 708 S.E. 245, 251 (2011) (rejecting the argument that the Commonwealth must prove one of the specific factors originally listed in McKeon to prove lascivious intent). In fact, our Supreme Court noted this reality in Viney by explicitly stating that the four types of enumerated evidence "*may* prove lascivious intent" and that "proof of any one factor *can* be sufficient to uphold a conviction[.]" Viney, 269 Va. at 300, 609 S.E.2d at 28 (emphases added); see also Simon, 58 Va. App. at 207, 708 S.E.2d at 251. Instead, "[l]ascivious intent, like any intent, may be proved with any evidence that establishes the requesting intent beyond a reasonable doubt." Id. It follows that whether McCoy was aroused and what, if anything, McCoy conveyed or attempted to convey to E.J.M. is evidence relevant to the issue of intent, but these are not the *only* methods of establishing intent. See id.

"The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established." Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995).

Viewed in the light mandated on appeal, the evidence is clearly sufficient to support McCoy's conviction for sexual battery of a child. Notably, McCoy admitted to touching E.J.M.'s vaginal area twice to members of his family, investigating officers, and during his trial testimony. Even though McCoy attempted to characterize the events as an "accident" the jury was not required to believe McCoy's testimony. See Pease v. Commonwealth, 39 Va. App. 342, 357, 573 S.E.2d 272, 279 (2002) (*en banc*) ("[T]he jury [is] not required to believe the defendant's explanation, and if that explanation is not believed, the jury may infer that the

accused is lying to conceal his guilt." (quoting <u>Black v. Commonwealth</u>, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981))). Having seen and heard the evidence, including McCoy's conflicting statements and contradictory testimony that he suffered an injury causing memory difficulties and difficulty in expressing himself, the jury could also infer that McCoy purposefully sexually molested E.J.M. based upon McCoy's testimony that he was "excited" while watching cartoons with E.J.M. Further, the fact that the touching was of sufficient duration and intensity to result in E.J.M. telling McCoy to stop, and that the touching "hurt," "tickled," and made her "mad," provides sufficient circumstantial evidence to support the conclusion that McCoy acted with the requisite intent to molest or gratify either himself or the victim, or both.

McCoy's acts and statements and the effect of McCoy's actions on E.J.M.'s behavior are also evidence from which the jury could infer lascivious intent to convict McCoy of taking indecent liberties with a child. Again, "[l]ascivious intent, like any intent, may be proved with *any* evidence that establishes the requesting intent beyond a reasonable doubt." <u>Simon</u>, 58 Va. App. at 207, 708 S.E.2d at 251 (emphasis added). Based on all of the evidence discussed above, this Court cannot say that the jury's verdict was plainly wrong or without evidence to support it.

For the reasons stated above, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>