COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


COREY PARRISH
                                        OPINION BY
v.   Record No. 1113-01-1        JUDGE ROBERT P. FRANK
                                     AUGUST 13, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                 Wilford Taylor, Jr., Judge

          Charles E. Haden for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Corey Parrish (appellant) was convicted in a bench trial of

animate object sexual penetration of his six-year-old daughter,

in violation of Code § 18.2-67.2.  On appeal, he contends the

trial court violated his right of confrontation by allowing the

victim to testify by closed-circuit television, pursuant to Code

§ 18.2-67.9.  For the reasons stated, we affirm appellant's

conviction.

                        BACKGROUND[1]

     Prior to trial, the Commonwealth filed a motion to use

closed-circuit television, pursuant to Code § 18.2-67.9, to

allow K.P., the six-year-old victim, to testify outside the

_____
     [1] We do not recite the facts of the offense, since they are
irrelevant to this analysis.

presence of appellant.  Appellant opposed this motion.  At a pretrial hearing on the motion, the Commonwealth called Robin Bigford as an expert witness.[2]

Upon completion of the voir dire, the circuit court ruled Bigford was qualified to testify as an expert on the sexual abuse of children.  Bigford said she was aware of the circumstances surrounding the abuse charges.  She testified she met with K.P. on three occasions, and they discussed the upcoming trial, including some trial procedures and terminology.

According to Bigford, K.P. had a "very difficult time talking about court."  Indeed, even when Bigford attempted to use dolls and chairs to simulate a courtroom setting, K.P. did not want to participate.

Additionally, when Bigford was playing house with K.P., to determine if the child would "play out" anything that happened to her in the home, she became very nervous when pretending the father was giving the baby a bath.  She told Bigford, who had the father doll, "[N]o, no, stop it."  K.P. then said the father doll was "naughty or bad," had him go onto the roof of the dollhouse "for a long time," and said he was not allowed to eat with the family.

_____

[2] While appellant objected to Bigford's qualification as an expert witness and appealed on that issue as well, the appeal was not granted on that issue.  Therefore, we do not recite her qualifications.

K.P. did verbally express her fear of the courtroom.  She told Bigford that she did not want to talk in front of her father, and she appeared "[n]ervous and distracted."  She ran around the room after making the statement.  K.P. also expressed her nervousness about testifying to a school counselor.

At the most recent session with Bigford, a few days before the hearing, K.P. was "especially nervous" and was "throwing doll furniture around."  When Bigford asked if she knew what was going to happen in a few days, K.P. indicated on Wednesday she was going to court.

Bigford opined K.P. would "suffer severe emotional trauma" if she testified in open court in front of appellant, "because of her young age and her fears and because she is not ready at this point.  She does not understand enough about court, for instance."  Bigford explained, "She is nervous if I bring up anything about court.  When I talk about other things she is not nervous, but when I talk about court she is nervous and her eyes got really big when we talked about court."  In fact, the only time K.P. sat quietly and "looked very scared" during a session was when they were discussing court.  Bigford later explained that the nature of the charges, together with this fear of court, increased the likelihood of severe emotional trauma.

On cross-examination, Bigford explained her opinion was based on "[K.P.'s] behaviors and also what she has stated.  Her young age and the fact that she has a short attention span, [and

she] does not seem able to deal with stress well from what I've seen."  She also noted that the child was not "very verbal" and possibly suffered from Attention Deficit Disorder, thus making the open court appearance more traumatizing for her.

K.P. told Bigford that she had testified in juvenile and domestic relations district court and "didn't want to do it again.  She seemed to feel that she had done it once and she shouldn't have to do it again."

When asked on cross-examination what specific emotional trauma K.P. would suffer from testifying in front of appellant, Bigford said she could not specify particular "symptoms" or explain the precise effect on her personality.  Bigford explained the emotional trauma could manifest itself in nightmares, bed-wetting, "not doing well at school," or "not eating very well . . . .  There could be a lot of behaviors that would express this."  She further explained:

> The emotional trauma would be something that she would feel, something that she would have to work out in therapy.  I can't state exactly how this would be displayed.  I can just state that it's my clinical opinion that she would suffer that emotional trauma and that it would be severe.

Bigford also opined that K.P. would feel less apprehensive testifying on closed-circuit television and that setting would be less emotionally traumatizing.  Bigford further believed K.P. would be able to communicate better using this procedure.

At the conclusion of the hearing, the trial court granted the Commonwealth's motion to allow K.P. to testify by closed-circuit television. The trial court was satisfied that "there is substantial likelihood that the child will suffer severe emotional trauma" if she testified in open court in the presence of appellant. The court noted, "[S]he's a [six]-year-old child, the father is the alleged perpetrator, and we have the opinion of an expert, clinical opinion of an expert, that supports the Commonwealth's motion . . . ."

## ANALYSIS

Appellant does not contest the constitutionality of Code § 18.2-67.9,[3] only its application to the facts of this case.

---

[3] Code § 18.2-67.9 states, in part:

> B. The court may order that the testimony of the child be taken by closed-circuit television as provided in subsection A if it finds that the child is unavailable to testify in open court in the presence of the defendant, the jury, the judge, and the public, for any of the following reasons:
>
> 1. The child's persistent refusal to testify despite judicial requests to do so;
>
> 2. The child's substantial inability to communicate about the offense; or
>
> 3. The substantial likelihood, based upon expert opinion testimony, that the child will suffer severe emotional trauma from so testifying.
>
> Any ruling on the child's unavailability under this subsection shall be supported by the court with findings on the record or

Specifically, he contends the trial court erred in allowing the six-year-old victim to testify by closed-circuit television because the evidence did not support the court's finding that she would suffer "severe emotional trauma" by testifying in open court.  He argues "nervousness" is not sufficient proof of "severe emotional trauma" under Code § 18.2-67.9.  While we agree nervousness by itself is insufficient to establish severe emotional trauma, the evidence here included more than nervousness.

When reviewing the decisions of a trial court, we give great weight to the court's factual findings, which will not be disturbed on appeal unless plainly wrong or without evidence to support them.  See Brooks v. Rogers, 18 Va. App. 585, 587, 445 S.E.2d 725, 726 (1994); Shackleford v. Commonwealth, 262 Va. 196, 203-04, 547 S.E.2d 899, 903 (2001).  We also view the evidence and all reasonable inferences in the light most favorable to the party prevailing below.  Byers v. Commonwealth, 37 Va. App. 174, 179, 554 S.E.2d 714, 716 (2001).

"In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion."  Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668-69 (1997) (en banc) (citation omitted).  The

with written findings in a court not of record.

credibility and weight of witnesses' testimony is determined by the fact finder. Byers, 37 Va. App. at 179, 554 S.E.2d at 716.

In Maryland v. Craig, 497 U.S. 836, 841 (1990), the Supreme Court of the United States upheld a Maryland statute similar to Code § 18.2-67.9. The Supreme Court found:

> [I]f the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

Id. at 855. We believe the Commonwealth made an adequate showing of necessity in this case.

Appellant contends Bigford only opined K.P. would suffer a generalized feeling of nervousness if she testified in front of her father. The record belies this contention. In fact, Bigford specifically testified that in sexual abuse cases, "much more is involved than just someone being uncomfortable about testifying in front of the offender."

Bigford testified she met with six-year-old K.P. on three occasions. Bigford explained K.P. "had a very difficult time talking about court" and did not want to "talk" in front of appellant, her father. Bigford further testified that, after the victim expressed concern about "talking" in front of appellant, she became nervous and distracted and threw things around the

room.  K.P. also became nervous when Bigford pretended a father doll was bathing a baby doll.[4]

K.P. was not a verbal child and had a short attention span, possibly suffering from Attention Deficit Disorder.  She did not deal with stress well.  Bigford opined K.P. would suffer severe emotional trauma if required to testify in open court.  This trauma could manifest itself through, for example, nightmares, bed-wetting, doing poorly in school, and lack of appetite.  K.P. was already exhibiting a poor appetite.  Bigford further opined that K.P. likely would feel less apprehensive about testifying on closed-circuit television, which would be less emotionally traumatizing and enable her to communicate better.

In his ruling, the trial judge relied on the victim's age, that her father was the accused perpetrator, and Bigford's expert testimony.  Based on these factors, he found a substantial likelihood existed that K.P. would suffer severe emotional trauma if she testified in open court in the presence of her father.

The expert's opinion was based on observations and interaction with the six-year-old victim and on her experience and training as a counselor of sexually abused children.  She noted the child's behavioral responses whenever her court appearance was mentioned.  She further noted possible future behavioral problems.  She indicated therapy would be needed to resolve this trauma.  Bigford, in great detail, explained the clinical basis for her opinion.  Based on this record, we cannot say the trial court erred in finding a substantial likelihood

---

[4] One of the allegations involved appellant abusing K.P.

that, based upon expert opinion testimony, K.P. would "suffer severe emotional trauma from so testifying."  Code § 18.2-67.9.

Appellant also argues no evidence allowed the court to adduce K.P. was "unavailable to testify," as required by Code § 18.2-67.9, since she had testified in person at the preliminary hearing.  While appellant is correct that the victim must be "unavailable" under Code § 18.2-67.9, unavailability may be shown by (1) "refusal to testify," (2) "substantial inability to communicate about the offense," or (3) "substantial likelihood, based on expert opinion testimony, that the child will suffer severe emotional trauma from so testifying."  Code § 18.2-67.9. Thus, under the express terms of the statute, if the Commonwealth proves any one of these three situations exists, it has proven unavailability.  Since the trial court correctly concluded that the Commonwealth proved "severe emotional trauma" under Code § 18.2-67.9(B)(3), we find the victim was "unavailable."

Appellant next contends, even if "severe emotional trauma" was proven, the closed-circuit television arrangements used in this case failed to ensure the reliability of the victim's testimony and did not impress upon the child the seriousness of the proceeding.  Appellant maintains that, on cross-examination, the victim was allowed to color in a coloring book, which distracted the child and prevented her from responding to the attorney's questions.  As the Commonwealth correctly points out, this argument was not made at trial and, therefore, is barred from our review by Rule 5A:18.

---

during her bath.

At no time during trial did appellant object to the child having a coloring book.  At no time did appellant object to any procedure involved in the closed-circuit television testimony.  Although appellant asked the child to stop coloring on two occasions, he made no objection to the trial court, asking that the coloring book be removed or that the child be instructed to stop coloring or to pay attention.  The trial court was not asked to intercede in the progress of cross-examination in any way, except for appellant's request for a five-minute break.[5]  At no time throughout the trial did appellant object to the effect of the coloring book on the child's testimony.

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.  See also Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).  A contrary rule would "deny the trial court the opportunity to consider and weigh, and, if necessary, reconsider before finally ruling." Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978).  See also Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987).  The trial court here was never asked to amend the procedures used during K.P.'s testimony.

To avail himself of the "miscarriage of justice" exception to Rule 5A:18, an appellant must "affirmatively show . . . the error [that has occurred was] clear, substantial and material."

---

[5] Counsel then withdrew this request.

Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). Such circumstances are not demonstrated in this record. While K.P.'s testimony was, at times, confusing, inexact, or inconsistent, nothing suggests the coloring book clearly, substantially, and materially contributed to this problem such that a miscarriage of justice occurred. This witness was six years old, testifying about sexual abuse by her father. She had attention deficit problems and difficulty expressing herself verbally. Rule 5A:18, therefore, prevents our review of this issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's ruling.

Affirmed.