COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Alexandria, Virginia


TEDDY WOLDELASSIE ARAYA
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0044-02-4     CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        DECEMBER 17, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N. A. Kendrick, Judge

         Mark S. Thrash for appellant.

         Leah A. Darron, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General, on
         brief), for appellee.


     A jury convicted Teddy Woldelassie Araya (appellant) for the

murder of his ex-wife, Minat Habte (Habte), in violation of Code

§ 18.2-32, and for use of a firearm in the commission of a murder,

in violation of Code § 18.2-53.1.  Appellant contends that the

trial court abused its discretion by admitting into evidence an

affidavit in which Habte predicted that appellant would kill her.[1]

For the reasons that follow, we affirm.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] On brief, appellant also contended that the trial court
erred by failing to give a cautionary instruction but withdrew
this ground at oral argument.

## I.

On July 10, 2000 appellant had a chance encounter with his ex-wife, Habte. Appellant later told police that Habte insulted him, told him to stop following her, and left. Appellant became angry, followed Habte and a high-speed car chase ensued. Habte's eyes were "really big and wide and she was gripping the steering wheel." Appellant "was scowling" while he gave chase. Shortly after seeing the two cars pass, witnesses heard "popping noises" and saw Habte's car roll backwards downhill; it crashed into a retaining wall. "[S]omebody . . . appeared to be chasing the car from the front."

After the shooting, appellant returned to his apartment, called 911 and told the dispatcher he just shot his wife. He gave the dispatcher his name; told her where the shooting occurred, including directions; and gave her a description of Habte's car. Police went to both the scene of the shooting and appellant's apartment. Appellant told police he followed Habte "for about one or two blocks" and shot her "eight or nine times, until he ran out of ammunition in the gun." Habte suffered "a number of gunshot wounds," at least two of which were fatal. One of Habte's wounds indicated the shooting was from "close range."

## II.

Appellant admitted that he killed Habte; but he argued that he did so as a result of an "irresistible impulse." At trial,

-

Dr. Neil Blumberg, appellant's expert, opined "to a reasonable degree of medical certainty, that [appellant] does suffer from . . . actually two serious mental diseases, . . . and that as a result of those disorders he was unable to resist the impulse to commit the crime." Specifically, he stated that appellant suffered from

> a major depressive disorder, single episode, severe with psychotic features. And . . . post traumatic [sic] stress disorder, chronic. . . . In fact these two disorders had been present for some time prior to the offense, but certainly were present at the time of the offense and, in my opinion, directly led to his being unable to control the impulse to commit the crime.

Dr. Blumberg also stated that appellant was "a pretty non-violent person" and a "peaceful law-abiding citizen." Dr. Blumberg opined that the shooting was "so grossly out of character for [appellant]" that he viewed the shooting as "an explosive outburst."

During cross-examination of Dr. Blumberg, the Commonwealth's attorney sought to introduce into evidence an affidavit made by Habte in September 1998 as the basis for a protective order against appellant.[2] The Commonwealth argued the affidavit, which the expert conceded he had reviewed, was admissible to show the expert's bias. The affidavit states:

---

[2] The trial court had already admitted into evidence a redacted version of the affidavit during the Commonwealth's case-in-chief over appellant's hearsay objection. Whether the redacted version was properly admitted is not before us.

-

On 9/24/98 my husband came in evening at
8:00 p.m. and he was staying in his own
bedroom until 10:30 p.m.  After he calls me
in the bedroom and he starting [sic]
fighting and hitting me in my heart surround
and I was fented [sic] so that quickly I
called the police they came at 11:30 and
they asked him and he says this is not true.
After the police said this the 1st time we
just live [sic] him like that if there is
anything happened please call us they said.
But after them left he started fighting and
insult.

    *      *      *      *      *      *      *

Secondly I would like to request if there is
any thing [sic] happened he is the one he
killed me because after the police depart "I
will show you I will kill you said to" so
that please give him the first and last
warning.

    *      *      *      *      *      *      *

He said I will show you he might be kill me.

    *      *      *      *      *      *      *

1) I am so afraid because he is in the house
so that he will [sic] hitting me or kill me.

2) He has to be far from my house and around
my job.

3) For the last and the end the government
may asked to far away from my surround.

Habte signed the affidavit under oath before the intake

officer of the Arlington County Juvenile and Domestic Relations

District Court.[3]  Over appellant's objection, the trial court

---

[3] The Juvenile and Domestic Relations District Court for
Arlington County granted a protective order for one year on
October 13, 1998 after a hearing at which both appellant and
Habte appeared.  Police found a copy of the protective order in
the glove compartment of appellant's car after the shooting.

-

admitted the affidavit in evidence and permitted the Commonwealth to question appellant's expert about the contents to establish his bias.

The jury convicted appellant of murder and use of a firearm in committing murder. The trial court sentenced appellant to twenty-two years for the murder and three years for the use of the firearm, in accord with the jury's recommendation.

### III.

Appellant contends the trial court abused its discretion in admitting the affidavit into evidence. Appellant argues the affidavit and the statements contained therein were not probative of the expert's bias. We disagree.

"Justice does not require exclusion of evidence that is probative of the central issue on trial and that the accused himself chooses to interject." Kirk v. Commonwealth, 21 Va. App. 291, 298, 464 S.E.2d 162, 165-66 (1995). Dr. Blumberg testified on direct that appellant was "a pretty non-violent person" and that, but for the shooting, he was "an otherwise peaceful law-abiding citizen." When appellant elicited these statements, he opened the door for the Commonwealth to cross-examine Dr. Blumberg on instances of appellant's violence toward the victim. See, e.g., Satcher v. Commonwealth, 244 Va. 220, 252, 421 S.E.2d 821, 840 (1992); Newton v. Commonwealth, 29 Va. App. 433, 456, 512 S.E.2d 846, 856-57 (1999).

-

Once a party has "opened the door" to inquiry into a subject, the permissible scope of examination on the subject by the opposing party is "a matter for the exercise of discretion by the trial court," and we will not disturb the court's action on appeal unless it plainly appears that the court abused its discretion.

Savino v. Commonwealth, 239 Va. 534, 545, 391 S.E.2d 276, 282 (1990) (quoting Bunch v. Commonwealth, 225 Va. 423, 438, 304 S.E.2d 271, 279-80 (1983)).  "In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion.  The credibility and weight of witnesses' testimony is determined by the fact finder."  Parrish v. Commonwealth, 38 Va. App. 607, 613, 567 S.E.2d 576, 578-79 (2002) (internal citations and quotations omitted).  The trial court did not abuse its discretion in permitting the Commonwealth to cross-examine Dr. Blumberg on appellant's "peaceful" nature, as this testimony was probative of Dr. Blumberg's bias and whether he properly considered it in the formulation of his expert opinion at trial.[4]

"The bias of a witness . . . is always a relevant subject of cross-examination."  Goins v. Commonwealth, 251 Va. 442, 465, 470 S.E.2d 114, 129 (1996) (citing Norfolk & Western Railway Co. v. Sonney, 236 Va. 482, 488, 374 S.E.2d 71, 74 (1988); Brown v.

---

[4] "[E]xperts in criminal cases must testify on the basis of their own personal observations or on the basis of evidence adduced at trial."  Wright v. Commonwealth, 245 Va. 177, 197, 427 S.E.2d 379, 392 (1993) (citing Buchanan v. Commonwealth, 238 Va. 389, 416, 384 S.E.2d 757, 773 (1989)).

-

Commonwealth, 246 Va. 460, 464, 437 S.E.2d 563, 564-65 (1993)).

"The issue whether a particular question may be asked about a witness' bias is a matter submitted to the trial court's discretion." Id. (citing Shanklin v. Commonwealth, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981)). Here, the Commonwealth had the right to test Dr. Blumberg's bias by attempting to show the jury that Dr. Blumberg improperly discounted the information contained in the affidavit regarding appellant's prior acts of violence.

## IV.

Moreover, even assuming admission of the affidavit was error, we hold that any error was harmless. "The effect of an error on a verdict varies widely depending upon the circumstances of the case. Each case must, therefore, be analyzed individually to determine if an error has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (internal citations and quotations omitted). "In this case, in order to determine if it plainly appears that the error did not affect the verdict, we must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Id. at 1007, 407 S.E.2d at 912. "An error does not affect the verdict if we can determine, without 'usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.'" Hanson v.

-

Commonwealth, 14 Va. App. 173, 190, 416 S.E.2d 14, 24 (1992) (quoting Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911).

Erroneously admitted evidence may be harmless when it tends to prove an undisputed fact that is also proven by other independently derived evidence. Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992). The decisive issue in this case was whether appellant's mind was "so impaired by disease that he [was] totally deprived of the mental power to control or restrain his act." Godley v. Commonwealth, 2 Va. App. 249, 251, 343 S.E.2d 368, 370 (1986) (citing Thompson v. Commonwealth, 193 Va. 704, 718, 70 S.E.2d 284, 292 (1952)).

Appellant's expert opined that appellant suffered from two mental defects and that these conditions "directly led to his being unable to control the impulse to commit the crime." The Commonwealth's expert, on the other hand, stated that appellant did "not meet the criteria for either a cognitive impairment or a volitional impairment that would rise to the level that's typically associated with a finding of insanity" even if he had a mental disease. Thus, the question before the jury was whether appellant suffered from an irresistible impulse at the time of the shooting, not whether the victim feared him.

"'Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicicial declaration is clearly established by other competent evidence.'" West v Commonwealth, 12 Va. App. 906,

-

911, 407 S.E.2d 22, 25 (1991) (quoting Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979)). See also Bowman v. Commonwealth, 28 Va. App. 204, 212, 503 S.E.2d 241, 245 (1998); Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444 (1993). Thus, we must review the evidence to determine whether the affidavit was merely cumulative and whether the information it contained was clearly established by other evidence. Extensive other evidence established that the victim feared appellant and was afraid he intended to kill her.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence proved that appellant had many violent confrontations with Habte during their marriage and after their divorce in December 1999. Habte told at least three people at different times that appellant hit her. Habte's sister testified appellant came home one evening and "he started arguing with [Habte] . . . he's pulling . . . and he wanted to hit her again. . . . And she was running." Appellant also "insulted her that she is sleeping with a man — with different men in front of me." Habte also told her sister that appellant "hit her . . . in her breast." Similarly, the parties' neighbor stated that the police were called to the marital home twice. On one occasion, Habte appeared at the

-

neighbor's door claiming appellant hit her. Habte stayed with the neighbor until the police arrived. When the neighbor later asked appellant why he hit Habte, appellant replied he had not hit her; rather, "he merely threw a book at her." Appellant also told the neighbor "that [Habte's] family is a family of whores." After Habte went to stay with a family friend for a week, appellant admitted to the friend he had hit Habte, "he say, The way I hit her, it wasn't that big, or a big issue to make of it."

In September 1998, after one of these confrontations, Habte sought and received the protective order that required appellant to "refrain from committing further acts of family abuse." Numerous witnesses, including Habte's sister and members of appellant's family, testified about the protective order. Police found copies of the protective order and Habte's affidavit in support of the order in appellant's glovebox and among his personal papers. Under these circumstances, we find that the affidavit was merely cumulative of other evidence that appellant had a history of violence toward Habte and that she sought the help of others, including the courts, for protection.

Additionally, the evidence showed that appellant was in control of his actions immediately after he shot Habte. Appellant called the 911 dispatcher and told her he killed his wife, provided the dispatcher with directions and a description of Habte's car, and was still on the phone with the 911

-

dispatcher when police arrived at his apartment.  He later

revised his version of how the shooting occurred, claiming he

"blacked out."  Appellant told the Commonwealth's expert:

> He remembered that she was insulting to him,
> . . . that she called him an obscene name
> . . . .  He remembers getting very angry
> with her at this.  He remembers that she
> took something and threw it and hit him in
> the face, some type of small white object.
> He's not sure what it was.
>
> And then he said that is really the last
> thing that he remembered, that there was
> then a blank in his memory, a complete
> blank, and that the next thing that he
> remembered is that he was sitting in his own
> apartment, . . . with his handgun, and that
> he noticed that his handgun was empty when
> previously it had been fully loaded.

These actions support the Commonwealth's expert's opinion that

appellant's actions were not the product of an "irresistible

impulse."

Lastly, Dr. Blumberg testified that the content of the

affidavit was "entirely consistent with my assessment of

[appellant's] mental state."  He stated that the affidavit

showed appellant "was out of touch with reality and delusional

about their relationship, viewing [Habte] as cheating on him,

conspiring against him when in fact he was having major

difficulties controlling his behavior with her."  Thus,

appellant's expert conceded that the affidavit merely supported

his theory of irresistible impulse.  Clearly, the record

supports that "[t]he parties have had a fair trial on the merits

-

and substantial justice has been reached."  Lavinder, 12

Va. App. at 1010, 407 S.E.2d at 914.  Accordingly, the judgment

of the trial court is affirmed.

Affirmed.

-