COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judge O'Brien and Senior Judge Haley
Argued by teleconference

CHRISTOPHER DUSTIN MAYBERRY

MEMORANDUM OPINION* BY
v.        Record No. 1380-21-2          JUDGE JAMES W. HALEY, JR.
OCTOBER 18, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
S. Anderson Nelson, Judge

Jordan B. Davies (Jordan B. Davies, PLLC, on brief), for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Christopher Dustin Mayberry of aggravated sexual battery, contributing to

the delinquency of a minor, and four counts of taking indecent liberties with a minor.[1]  On appeal,

Mayberry argues that the trial court erroneously permitted the victim to testify by closed-circuit

television under Code § 18.2-67.9.  Mayberry also challenges the sufficiency of the evidence to

sustain his aggravated sexual battery conviction and two of his convictions for taking indecent

liberties with a minor.  For the following reasons, we affirm the trial court's judgment in part and

reverse it in part.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court dismissed related charges of displaying child pornography and object sexual penetration.

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In March 2019, thirty-two-year-old Mayberry was living with his girlfriend, Kelsey Angel, and her seven-year-old daughter, K.M.  On March 27, 2019, Angel became ill at work and brought K.M. home from school early.  Angel slept in her bedroom while K.M. played in the living room, and Mayberry worked outside on his pickup truck, near Angel's van and a car.  When K.M. went outside to retrieve her bookbag from Angel's van, Mayberry told her that she would "be cleaning out" the car with him.  She placed her bookbag in the house and returned to assist him.

K.M. found Mayberry urinating behind his pickup truck.  Mayberry asked K.M. whether she "want[ed] to touch it," and she "briefly touched" his exposed penis.  Mayberry then entered the car and told her to "get in on the other side."  After K.M. complied, Mayberry removed several "inappropriate" DVDs from the glovebox and showed them to her, saying that she "would have to watch them" with him "one day when [Angel] was not home."  As Mayberry played "inappropriate videos" of "naked people" on his cell phone, K.M. saw that "his private [was] out" and he "was pushing his area up and down."  Over the material directly covering K.M.'s intimate parts, he placed "two fingers" on the "crack" of her "genitals" and began "circling" them with his fingers. Mayberry also grabbed K.M.'s hand and used it to push "up and down on his private parts" before continuing to "do[] it by himself" until "some white stuff came out."  Afterward, Mayberry "clean[ed] himself up" with a "pair of gloves" and placed them in his truck "so [Angel] couldn't find them."  He warned K.M. not to "tell anybody" what he had done because they would "both go to jail"; he also said that he "had to clear" his cell phone's "history" so Angel would not discover it.

That evening, K.M. removed her clothes and placed them in the laundry hamper. She later disclosed the incident to her father's girlfriend.

Three days after the incident, Appomattox County Sheriff's Investigator Christopher Tanner executed a search warrant for Angel's home and Mayberry's pickup truck. In a dryer inside the house, Tanner found several rags, a pair of gloves, and K.M.'s clothing worn during the incident. Police prepared a "PERK"[2] and obtained a buccal swab of Mayberry's DNA. Tanner also interviewed K.M., who drew a circle near the vagina on a diagram of a female body to indicate where Mayberry had touched her genitals.

Tanner conducted three audio-recorded interviews with Mayberry. Initially denying any wrongdoing, Mayberry became "emotional" and confessed that he had allowed K.M. to touch his penis while he was urinating behind the truck. He admitted that he had asked her whether she "wanted to touch it" and warned her afterward, "don't say nothing to nobody." Mayberry also admitted that he "made a bad decision" but maintained that he "never touched" K.M. Mayberry wrote two letters to K.M., apologizing "for everything" and stating his desire to become a "true father/stepfather" to her.

Police arrested Mayberry, and the Commonwealth indicted him for aggravated sexual battery, contributing to the delinquency of a minor, and four counts of taking indecent liberties with a minor. Before trial, the Commonwealth moved the trial court to allow K.M. to testify via two-way, closed-circuit television under Code § 18.2-67.9. At a hearing on the motion, Sara Addair, an "expert in childhood trauma" and its effect "on children under ten testifying in open court," testified that "childhood trauma" is "any kind of negative event that emotionally impacts a child." She explained that children who have experienced such trauma "usually" suffer from

---

[2] At trial, Yelitza Rivera-Rodriguez, a forensic scientist, testified that "PERK" is an acronym for "Physical Evidence Recovery Kit." DNA samples from K.M.'s hands, "thighs/external genitalia," and "[v]aginal/cervical" area comprised the PERK.

"PTSD," which often manifests as recurrent "distressing thoughts and memories, nightmares, and avoidant behavior"; other symptoms include "hypervigilance, hyper arousal, irritability," and "negative beliefs about self."

Addair had been conducting weekly, one-hour therapy sessions with K.M. for about seven months since the incident. During those sessions, K.M. "shut down" and cried "any time" Addair discussed Mayberry or court. K.M. identified where the assault had occurred but could not "handle" discussing "anything to do with" Mayberry or the assault. K.M. also had disclosed that "she would be very scared if she had to see [Mayberry] again." Based on Addair's observations and K.M.'s statements, Addair opined that K.M.'s "PTSD would get significantly worse" if she had to testify in front of Mayberry in open court. According to Addair, "physically seeing [Mayberry] in person would" terrify K.M. and cause her to reexperience her trauma from the assault, which would exacerbate her PTSD.

Addair opined that the likely consequence of K.M.'s reexperiencing her trauma would be "increased anger outbursts and defiance" at home and school and, "potentially," a "crisis situation." She opined that K.M. might become "more physically aggressive" and "potentially do something to hurt herself," including "suicide." She cautioned that "even for a kid as young as eight[,] I've seen that happen." Considering those risks, Addair concluded that testifying by closed-circuit television presented "less of a chance of exacerbating [K.M.'s] PTSD symptoms," although K.M. would still be "nervous." Acknowledging that "testifying in court is nerve racking for anyone," Addair clarified, "I don't think [testifying in court] would make her terrified. I think seeing him in court would make her terrified."

The trial court found that Addair had maintained "constant interaction" with K.M. since the incident and her testimony demonstrated that K.M. was "very scared," suffered from PTSD, and was unable to discuss the incident. Continuing, the trial court found that, if compelled to

- 4 -

testify before Mayberry, K.M. would "re-experience the trauma," her PTSD would "worsen," and a "crisis situation" would develop where she would "suffer outbursts, aggression, and . . . potentially hurt herself." Based on those circumstances, the trial court found that there was "a substantial likelihood that K.M. . . . will suffer severe emotional trauma if required to testify" in Mayberry's presence. Accordingly, it granted the Commonwealth's motion.

At trial, K.M. testified via closed-circuit television about the assault as detailed above and added that the car was not "messy" and Mayberry had not been "cleaning" it. Angel testified that Mayberry "frequently brought stuff" into the house to wash in the laundry machine, including on the day of the incident. After Mayberry's arrest, she received two apology letters from him addressed to K.M. Tanner testified regarding the execution of the search warrant, K.M.'s interview, and Mayberry's admissions. He also authenticated the first apology letter Mayberry had written and the diagram K.M. had marked to indicate where Mayberry had touched her genitals.

At the conclusion of the Commonwealth's case, Mayberry argued that the evidence failed to prove the offense alleged in the indictment for one of the indecent liberties charges, in case number CR19000304-00. He asserted that although Code § 18.2-370 contains "many subsections," the indictment's language required the Commonwealth to prove specifically "that he [had] proposed to feel" K.M.'s genitals in violation of Code § 18.2-370(A)(3). Continuing, he argued that the evidence established that he had touched K.M.'s genitals but not that he had proposed to do so. Mayberry also moved to strike the indictment for a second indecent liberties charge, in case number CR19000252-00, arguing that the evidence failed to prove that he had the requisite "lascivious intent" when he invited K.M. inside the car. The trial court denied the motions.

Testifying for the defense, Yelitza Rivera-Rodriguez said that forensic DNA testing did not detect blood, semen, or Mayberry's DNA on K.M.'s clothing worn during the assault, the rags and gloves collected from the dryer, or the physical samples included in the PERK. She acknowledged, however, that "washing and drying" removes "any bodily fluids" from clothing.

At the conclusion of the evidence, Mayberry renewed his motion to strike on the same grounds, adding that the evidence failed to exclude the reasonable hypothesis that when he invited K.M. inside the car, he had intended only to clean the vehicle rather than "expose himself." The trial court denied the motion in relevant part.[3] The jury convicted Mayberry of aggravated sexual battery, contributing to the delinquency of a minor, and four counts of taking indecent liberties with a minor. Mayberry appeals.

ANALYSIS

I. K.M.'s Unavailability under Code § 18.2-67.9

Mayberry argues that the trial court erred by finding that K.M. was unavailable to testify under Code § 18.2-67.9 because the evidence did not establish a "substantial likelihood" that she would "suffer severe emotional trauma" if compelled to testify in Mayberry's presence. He maintains that Addair testified only that K.M. "would *potentially* have a crisis situation" and "*could* suffer" exacerbated PTSD symptoms, which "falls short" of the statutory "substantial likelihood" requirement. Mayberry also argues that K.M's symptoms were "*de minimus*" and did not constitute "severe emotional trauma." We disagree.

This Court "review[s] a trial court's decision to admit or exclude evidence" for abuse of discretion and "will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "When evaluating a trial

---

[3] The trial court dismissed the object sexual penetration charge.

court's evidentiary ruling, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). The "abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Carter*, 293 Va. at 543-44 (alteration in original) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

"The measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Witt v. Commonwealth*, 215 Va. 670, 674 (1975)). A trial court resolves the factual questions underlying admissibility. *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001) (quoting *Witt*, 215 Va. at 674). Moreover, when basing those findings on expert witness testimony, the "fact finder may consider the basis for the expert's opinion." *Parrish v. Commonwealth*, 38 Va. App. 607, 613 (2002). Such findings are binding on appeal "unless 'plainly wrong' or without evidence to support them." *Bloom*, 262 Va. at 821 (quoting *Campos*, 67 Va. App. at 702).

A trial court may allow "testimony of the child be taken by closed-circuit television . . . if it finds that the child is unavailable to testify in open court in the presence of the defendant, the jury, the judge, and the public" because of "[t]he substantial likelihood, based upon expert testimony, that the child will suffer severe emotional trauma from so testifying." Code § 18.2-67.9(2). That statute allows the Commonwealth to "protect[] child witnesses from the trauma of testifying" in a "face-to-face confrontation with the defendant" upon "an adequate

- 7 -

showing of necessity." *Parrish*, 38 Va. App. at 613 (quoting *Maryland v. Craig*, 497 U.S. 836, 855 (1990)); *see also Johnson v. Commonwealth*, 40 Va. App. 605, 615 (2003) (holding that Code § 18.2-67.9 "requires a 'case-specific' showing of necessity").

Although general nervousness about testifying in open court does not constitute "severe emotional trauma" under the statute, we have affirmed a trial court's decision to allow child testimony via closed-circuit television when an expert testified that the child "would" experience severe emotional trauma that "could" manifest in "nightmares, bed-wetting, doing poorly in school, and lack of appetite." *Parrish*, 38 Va. App. at 612-14. In *Parrish*, the trial court's ruling rested on "the victim's age, that her father was the accused perpetrator, and [the] expert testimony." *Id.* at 614. Similarly, we have affirmed a finding that a child would suffer severe emotional trauma based on expert testimony that the child had "low self-esteem," felt "ashamed," and reported that she would "run out of court" if asked to testify. *Johnson*, 40 Va. App. at 617-18.

Here, Addair had met with K.M. weekly for approximately seven months. During those sessions, K.M. expressed fear of the prospect of seeing Mayberry again and whenever Addair attempted to discuss Mayberry or court, K.M. "shut down" and cried. Based on those circumstances and her extensive clinical experience, Addair opined that if compelled to testify in front of Mayberry, K.M.'s "PTSD *would* get significantly worse" because "seeing [Mayberry] in person *would*" cause K.M. to become "terrified" and reexperience her trauma. (Emphasis added). *See id.* at 610-11; *cf. id.* at 617-18 (affirming the trial court's ruling where expert opined that the child would "run out of court" if compelled to testify in person). K.M.'s reexperienced trauma, according to Addair, likely would manifest in "increased anger outbursts and defiance" at home and school, and her PTSD symptoms could escalate into a "crisis situation" involving "anger outbursts," physical aggression, and even suicide. Indeed, Addair cautioned that the risk

of suicide was not mere speculation because she was aware of suicide by children as young as eight years old. Moreover, she expressly distinguished K.M.'s likely trauma if compelled to testify in front of Mayberry from generalized courtroom anxiety. She opined that although K.M. would still be "nervous" testifying by closed-circuit television, she would not be "terrified" in doing so.

Although Addair, at times, opined that testifying in Mayberry's presence "would *potentially*" cause a "crisis situation," and K.M. "could" suffer emotional outbursts, that testimony does not render the trial court's finding plainly wrong or without evidentiary support. The trial court did not fix upon isolated statements but considered Addair's testimony as a whole. *Cf. Parrish*, 38 Va. App. at 614-15 (holding trial court's ruling declaring child unavailable under Code § 18.2-67.9 was not plainly wrong considering child's age, victimization by father, and expert testimony). Accordingly, we cannot conclude from the record that the trial court erred by finding a substantial likelihood, based on expert testimony, that K.M. would suffer severe emotional trauma if forced to testify against Mayberry in open court.

## II. Sufficiency of the Evidence

Mayberry next challenges the sufficiency of the evidence to sustain the conviction for aggravated sexual battery and two of the convictions for taking indecent liberties with a minor. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). To the extent that Mayberry's assignments of error involve questions of law or statutory interpretation, we review such questions *de novo*. *Peters v. Commonwealth*, 72 Va. App. 378, 387 (2020).

### A. Aggravated Sexual Battery

Mayberry first argues that the evidence failed to prove he committed aggravated sexual battery because K.M.'s testimony was "inherently incredible" as a matter of law. Mayberry, however, did not preserve that argument for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). Moreover, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "Specificity and timeliness undergird the contemporaneous objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)); *Brown v. Commonwealth*, 279 Va. 210, 217 (2010). "Not just any objection will do. It must be both specific and timely—so that the

trial judge would know the particular point being made in time to do something about it." *Bethea*, 297 Va. at 743.

> In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own.

*Commonwealth v. Bass*, 292 Va. 19, 33 (2016). In his motion to strike at the conclusion of the Commonwealth's case and his renewed motion to strike, Mayberry did not challenge the sufficiency of the evidence to prove the aggravated sexual battery charge. In addition, he did not argue specifically that K.M.'s testimony was inherently incredible as a matter of law during either motion, nor did he move to set aside the jury's verdict on that basis. Thus, the record demonstrates that Mayberry did not present to the trial court the argument he now raises on appeal. Accordingly, the argument is waived. *See Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022) (holding defendant in a jury trial failed to preserve sufficiency challenge under Rule 5A:18 where he did not argue inherent incredibility in motions to strike or set aside the verdict). Although there are exceptions to Rule 5A:18, Mayberry has not invoked them, and the Court will not do so *sua sponte*. *Edwards*, 41 Va. App. at 761.

### B.  Indecent Liberties Conviction (Case Number CR19000304-00)

Mayberry contends that the evidence was insufficient to sustain his conviction under Code § 18.2-370(A)(3) because it failed to prove that he *proposed* to K.M. that *he* feel or fondle her genitals. He concedes that the evidence established that he "felt or fondled" K.M. but argues that "actual touching, or sexual battery, is already criminalized" under Code § 18.2-67.3. Code § 18.2-370(A)(3), according to Mayberry, proscribes the proposal to touch a child's genitals, not

- 11 -

the touching itself.  Therefore, because there was no evidence that "he proposed to touch" K.M., Mayberry asserts that his conviction must be reversed.[4]  We agree.

"The primary purpose of statutory interpretation 'is to ascertain and give effect to legislative intent.'"  *Holloway v. Commonwealth*, 72 Va. App. 370, 375 (2020) (quoting *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018)).  This Court "determines legislative intent from the words employed in the statute."  *Botkin*, 296 Va. at 314 (quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)).  "When the language of a statute is unambiguous, we are bound by the plain meaning of the words used."  *Antisdel v. Ashby*, 279 Va. 42, 48 (2010).  Further, in interpreting a statute, "[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed."  *Hart v. Commonwealth*, 18 Va. App. 77, 79 (1994) (quoting *King v. Commonwealth*, 2 Va. App. 708, 710 (1986)).  When interpreting interrelated statutes, "we will read and construe them together in order to give full meaning, force, and effect to each."  *Antisdel*, 279 Va. at 48.  "Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*, and should be construed together."  *Butcher v. Commonwealth*, 298 Va. 392, 403 (2020) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 406 (1957)).

We start this analysis with recognizing that Code § 18.2-370(A)(3) does not define the word "propose."  "[W]hen a particular word in a statute is not defined therein, a court must give

---

[4] In general, Code § 18.2-370(A)(3) requires proof that the accused with lascivious intent, knowingly and intentionally "propose[d] that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of [the accused] *or* propose that [the accused] feel or fondle the sexual or genital parts of any such child."  (Emphasis added).  Nevertheless, "[i]t is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review."  *Spell v. Commonwealth*, 72 Va. App. 629, 635 (2020) (quoting *Bryant v. Commonwealth*, 295 Va. 302, 307 (2018)).  The trial court instructed the jury, without objection, that the Commonwealth was required to prove specifically that Mayberry "proposed that *he* feel or fondle the sexual or genital parts of K.M."  (Emphasis added).  "This jury instruction was uncontested and thus, at a minimum, is the law of the case."  *Wagoner v. Commonwealth*, 63 Va. App. 229, 248 (2014), *aff'd*, 289 Va. 476 (2015).

it its ordinary meaning." *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (*en banc*); *see also Eberhardt v. Commonwealth*, 74 Va. App. 23, 32 (2021) ("An undefined term in a statute may be defined using its standard dictionary definition."). The word "propose" means to "form or declare a plan or intention"; "set before the mind"; "offer for consideration, discussion, acceptance, or adoption"; or "set up or declare as a formed purpose." *Propose*, *Webster's Third New Int'l Dictionary* (1981). By contrast, the word "feel" means to "caress" or "examine . . . by such methods *as touching*. . . ." *Feel*, *Webster's, supra* (emphasis added). Similarly, the word "fondle" denotes either "to handle tenderly, lovingly, or lingeringly" or "to show affection or desire by caressing." *Fondle*, *Webster's, supra*.[5] We recognize that proposals are not limited to verbal communications. Nonetheless, by its plain and unambiguous terms, Code § 18.2-370(A)(3) distinguishes between the completed act of "feeling or fondling" a child and "proposing" to do so.

Consistent with those definitions, both the Supreme Court of Virginia and the General Assembly have recognized that sexually touching a child's genitals and proposing to do so are distinct crimes. The Supreme Court has held that, if done with lascivious intent,"[t]he simple act of proposing or inviting constitutes the completed crime" of taking indecent liberties with a minor and proof of "any sexual touching of or by the victim is not required." *Hix v. Commonwealth*, 270 Va. 335, 347 (2005) (interpreting Code § 18.2-370(A)(1)); *accord Sandoval v. Commonwealth*, 64 Va. App. 398, 417 (2015) (same). Conversely, sexual touching of a child's genitals is proscribed in Code § 18.2-67.3.[6]

---

[5] Webster's Third New International Dictionary contains additional definitions of the words propose, feel, and fondle; we recite only those relevant to this case.

[6] An accused is guilty of aggravated sexual battery if, with the intent to sexually molest, arouse, or gratify any person, he intentionally touches the genitalia, anus, groin, breast, or buttocks—or the material directly covering such intimate parts—of a child under the age of thirteen years. *See* Code §§ 18.2-67.3 (aggravated sexual battery), 18.2-67.10(2), (6). Read

The record does not contain any evidence about the touching other than K.M.'s testimony that Mayberry touched her by circling his fingers around the outside of her vagina. Thus, the evidence before the jury did not establish that Mayberry proposed—or declared his plan or intent—to touch K.M.'s genitals. Rather, the evidence established that he sexually touched K.M.'s genitals without making any statement concerning his desire or intent. Although that evidence permitted the jury to find that Mayberry committed aggravated sexual battery, it did not establish the indecent liberties offense charged in case number CR19000304-00. *See* Code § 18.2-67.3.

Recognizing that Mayberry did not expressly "propose" that he touch K.M.'s genitals, the Commonwealth nevertheless contends that Mayberry implicitly "proposed" to do so. Relying on *Robertson v. Commonwealth*, No. 2564-08-2 (Va. Ct. App. Feb. 23, 2010),[7] the Commonwealth asserts that "by reaching out his hand" to touch K.M.'s genitals, Mayberry tacitly communicated a proposal to touch her genitals. We disagree.

The record contains no evidence that Mayberry gestured or otherwise meant to express or emphasize any thought or idea by reaching to touch K.M. *See Viney v. Commonwealth*, 269 Va. 296, 300 (2005) (defining a "gesture" as "a movement usually of the body or limbs that symbolizes or emphasizes an idea, sentiment, or attitude"). Instead, the evidence established that Mayberry touched K.M.'s genitals to satisfy his prurient desire, *regardless* of whether she knew of his intent. *Cf. id.* (finding that defendant gestured to victim by making eye contact with her

together, Code §§ 18.2-370(A)(3) and 18.2-67.3(A) clearly prohibit related, but distinct conduct: the former, the proposal to sexually touch a child's genitals; the latter, the act of doing so. *See Butcher*, 298 Va. at 403 (quoting *Prillaman*, 199 Va. at 406) (observing that statutes in *pari materia* must be construed together to give meaning to each).

[7] Although "Rule 5A:1(f) provides that unpublished opinions may be cited as informative, 'unpublished opinions are merely persuasive authority and not binding precedent.'" *Coffman v. Commonwealth*, 67 Va. App. 163, 172 (2017) (quoting *Baker v. Commonwealth*, 59 Va. App. 146, 153 n.3 (2011)).

and looking down at his groin). To be sure, accepting the Commonwealth's argument under the facts of this case would effectively eliminate the word "propose" from Code § 18.2-370(A)(3) by conflating the discrete acts of touching a child's genitals and proposing to do so. *See Chesapeake Hospital Authority v. State Health Comm'r*, ___ Va. ___, ___ (May 19, 2022) ("Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied." (quoting *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944))).

The Commonwealth's reliance on *Robertson* is also misplaced. In *Robertson*, the defendant exposed his erect penis to a fourteen-year-old boy while staring at him in a communal shower. No. 2564-08-2, slip op. at 5. When the defendant approached the child, the child fondled the defendant's penis. *Id.* At trial, the defendant testified that the child also rubbed his own penis against the defendant. *Id.* On appeal, he argued that the evidence failed to prove that he had "proposed" to feel or fondle the victim under Code § 18.2-370 because "no words were exchanged." *Id.* at 3. This Court held that the evidence proved that he committed indecent exposure to a minor under Code § 18.2-370(A)(1)[8]—which does *not* require proof of a proposal—by "exposing his genitals to another with lascivious intent." *Id.* at 3-4. Thus, *Robertson* is inapposite because it addressed a separate theory of prosecution, indecent exposure to a minor under Code § 18.2-370(A)(1), that does not necessarily require proof of a proposal. Moreover, whereas it was relevant in *Robertson* that the victim touched the defendant's genitals, here the Commonwealth was charged with proving that Mayberry proposed that *he* touch K.M.'s genitals. To quote from *Robertson*: "Appellant reasons that because no words were exchanged,

---

[8] Code § 18.2-370(A)(1) requires proof that the accused, with lascivious intent, knowingly and intentionally "[e]xpose[d] his or her sexual or genital parts to any child to whom such person is not legally married *or* propose[d] that any such child expose his or her sexual or genital parts to such person." (Emphasis added).

appellant did not 'propose' anything.  However, appellant ignores subsection (A)(1) of Code § 18.2-370 which proscribes a person from exposing his genitals to another with lascivious intent."  *Id.*  There is no language in *Robertson* which addresses a "proposal" except that quoted above.  Proposal was not part of that Court's *ratio decidendi*.  But *Robertson* does distinguish a proposal from other sexual related offenses.

To summarize, a plain reading of Code § 18.2-370(A)(3) demonstrates that the word "propose" does not include touching a child's genitals.  To conclude otherwise would render the word "propose" meaningless and Code § 18.2-67.3 redundant.  Here, the evidence proved only that Mayberry touched K.M.'s genitals, which is insufficient to prove that he "propos[ed]" to do so.  Accordingly, we reverse Mayberry's conviction for indecent liberties in case number CR19000304-00 and dismiss the indictment.

### C.  Indecent Liberties Conviction (Case Number CR19000252-00)

Finally, Mayberry contends that the evidence failed to prove that he violated Code § 18.2-370(A)(5) by inviting K.M. into the car with "lascivious intent" to expose himself or "inappropriately touch[ ]" her.  Mayberry reasons that "the evidence equally supports the theory" that he invited K.M. into the car for the "wholly innocent reason" of cleaning the vehicle "but then subsequently decided to expose himself or inappropriately touch her."

"'Lascivious' as used in Code § 18.2-370 'describes a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.'"  *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Campbell v. Commonwealth*, 227 Va. 196, 199 (1984)) (some internal quotations omitted).  "Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements."  *Id.* (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).  "The statements and conduct of an accused after the events that constitute the charged crime may also

- 16 -

be relevant circumstantial evidence of intent." *Id.* (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 645 (1997)); *see also McKeon v. Commonwealth*, 211 Va. 24, 27 (1970) (observing that whether the defendant "made any gestures toward himself or the child," any "improper remarks," "asked [the victim] to do anything wrong," or was "sexually aroused" are factors probative of lascivious intent).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, a guilty verdict demonstrates that "the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.*

Although Mayberry told K.M. that she would "be cleaning out" the car with him while Angel slept, K.M. testified that the car was not "messy" and Mayberry was not cleaning it when she returned. He was urinating behind the truck and invited K.M. to touch his exposed penis *before* they entered the car. After entering the car, Mayberry did not do anything to clean it. Instead, he immediately masturbated in front of K.M. while watching erotic videos on his phone; he also showed her "inappropriate" DVDs, which he said they would have to watch together when her mother was not home. Collectively, that evidence supports the jury's reasonable conclusion that Mayberry was "eager for sexual indulgence" when he directed K.M. into the car. *Simon*, 58 Va. App. at 206 (quoting *McKeon*, 211 Va. at 27); *cf. Breeding v. Commonwealth*, 213

- 17 -

Va. 344, 344-45 (1972) (finding insufficient evidence of lascivious intent where defendant asked two girls for driving directions as he sat in a vehicle with his penis exposed but "made no suggestive remarks or gestures"); *see also Simon*, 58 Va. App. at 209-10 (finding sufficient evidence of lascivious intent where defendant parked and exposed himself to a child through a pair of modified shorts, which he hid in his vehicle containing pornographic videos).

In addition, the jury could infer Mayberry's consciousness of guilt from his affirmative acts of falsehood and concealment. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself."). Immediately after the assault, Mayberry "clean[ed] himself," then hid and later laundered the item he had used to do so. He also admonished K.M. not to "tell anybody" what he had done and stated his intention to delete his cell phone's "history" to prevent her mother from discovering it. Despite Mayberry's claims that he "never touched" K.M., the jury was entitled to "discount" his alternative, "self-serving explanation" to police as an effort at "lying to conceal his guilt." *Shackleford v. Commonwealth*, 262 Va. 196, 209 (2001).

Finally, Mayberry's confessions provided the jury with compelling evidence of his guilt. "An admission deliberately made, precisely identified and clearly proved affords evidence of a most satisfactory nature and may furnish the strongest and most convincing evidence of truth." *Prince v. Commonwealth*, 228 Va. 610, 613 (1985). After initially denying any wrongdoing, Mayberry confessed to Investigator Tanner that he had let K.M. touch his penis and asked whether she had wanted to do so. Mayberry also admitted that he had "made a bad decision" and wrote two letters to K.M. apologizing for the incident.

- 18 -

In sum, Mayberry's statements and conduct, along with other circumstantial evidence and K.M.'s testimony, proved that he directed K.M. into the car with lascivious intent to expose his genitals and sexually abuse her. The jury was not plainly wrong accepting K.M.'s testimony as credible and rejecting Mayberry's hypothesis of innocence. Accordingly, the evidence was sufficient to support the convictions.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed in part, and reversed in part.

*Affirmed in part, and reversed in part.*