UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Malveaux

COREY JENKINS

v.      Record No. 1255-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 8, 2023

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William H. Shaw, III, Judge

(Angela R. Diaz, Senior Assistant Public Defender, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; William K. Hamilton, Assistant
Attorney General, on brief), for appellee.

Corey Jenkins ("appellant") appeals his conviction, following a jury trial, for indecent

liberties with a child under the age of 15 years, in violation of Code § 18.2-370. Appellant argues

that the trial court erred in denying his motion to strike, because the evidence failed to prove he

acted with lascivious intent toward the victim. After examining the briefs and record in this case,

the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly

without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Accordingly, we affirm the trial court's

ruling.

I. BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

So viewed, the evidence established that the victim, R.W.,[1] was eleven years old and lived with her four sisters and her mother, Dena Basco. Basco and appellant have a child in common, C.J. In August 2020, however, appellant and Basco were no longer in a romantic relationship but were successfully co-parenting the girls. Appellant was dating Shakira Lymas, and the couple lived in Hampton with appellant's sister, Tiffany, and Tiffany's boyfriend, Michael.[2]

On August 8, 2020, R.W. and her sisters spent the day at the beach with appellant and Lymas. In the evening, the group returned to appellant's home and the girls showered. After showering, R.W. made bracelets and anklets with Lymas. Lymas and R.W. decided to make nachos, and R.W. went downstairs to retrieve ingredients from a small secondary refrigerator in appellant's and Lymas's room.

While R.W. knelt to retrieve items from the refrigerator, appellant entered the room to change for work. He approached R.W., stood in front of her, and asked her to tie his shoe. R.W. hesitated, thinking that the request was strange, but then proceeded to tie appellant's shoe. As she did so, she heard a zipper unzip. R.W. looked up and saw appellant "whip[] out his private part" with his hand. R.W. noted that appellant was wearing boxer shorts underneath his tan work pants and that his private part protruded from his pants through a hole in his boxers. When asked to explain what she meant by private part, R.W. testified that she meant appellant's penis.

---

[1] We use initials, rather than the victim's and minors' names, to protect their privacy.

[2] Tiffany's and Michael's surnames were not provided at trial.

Appellant put his hands on his hips and "asked [R.W.] to, like, suck on it." R.W. said "no," and appellant repeated his demand. When R.W. again refused to comply, appellant became visibly angry and threatened her. At that moment, Lymas entered the room and appellant hastily put away his penis. Lymas questioned appellant while he gathered his things and left for work. After he departed, Lymas turned her attention to R.W. and asked her if something had happened. A "heavy feeling" fell over R.W., and she felt uncomfortable sharing what had just occurred because Lymas appeared to be upset with her. When R.W. returned home the next day, she told her mother about the incident.

On cross-examination, R.W. acknowledged that at the preliminary hearing she had testified that appellant was not wearing underwear and said, "suck my dick" instead of "suck on it." R.W. further admitted that she had disclosed the incident to her mother two days, rather than one day, after the incident.

Basco testified that upon returning home, R.W. attempted to tell her about the incident but was vague. Later, Basco received a troubling call from Lymas. Concerned, Basco spoke with R.W. about the incident. Basco noted that during this conversation, her daughter appeared "hurt and scared." Basco immediately called appellant and demanded he come over and speak with her in person. When he did so and had heard Basco's accusation, appellant became "fidgety" and did not make eye contact with her. Basco demanded that appellant take a lie detector test about the allegation or she would report it to the police. Basco explained that she was conflicted about going to the police with this accusation and wanted to deal with it within the family.

Several weeks later, Basco took R.W. to appellant's home where she repeated her accusation in front of Basco, Lymas, and appellant. Appellant admitted that he had asked R.W. to tie his shoe but denied exposing his penis to her. Ultimately, on September 10, 2020, R.W. and Basco reported appellant's conduct to the police.

On September 25, 2020, Catherine Tricomi of the Children's Hospital of the King's Daughters conducted a forensic interview with R.W. Tricomi noted that R.W. had a "neutral" demeanor during the interview, which she testified was common among children. Tricomi explained that it would not be unusual for a child to fail to make any disclosures during an interview. Furthermore, she noted that a child may not share all the details of an incident at once and that a child may disclose some details at different times. The Commonwealth played Tricomi's recorded interview with R.W. for the jury. During the interview, R.W. repeated her allegation that appellant entered the room while she knelt by the small refrigerator, unzipped his pants, and demanded that she perform fellatio upon him.

At the close of the Commonwealth's evidence, appellant moved to strike. Regarding lascivious intent, he argued that there was no evidence that he was sexually aroused, gestured to himself, tried to fondle his penis, or touched R.W. Appellant further argued that R.W. was inherently incredible because she had testified inconsistently on several key issues. First, R.W. did not remember what appellant's penis looked like. Second, R.W. inconsistently testified about the alleged remarks appellant made to her during the incident. Finally, appellant argued that the demand that R.W. "suck [his] dick" was insufficient, in and of itself, to establish lascivious intent. The trial court denied appellant's motion. After hearing closing arguments, the jury convicted appellant of indecent liberties with a child under the age of 15 years and the trial court sentenced him to 10 years' incarceration, with 6 years suspended.

This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in denying his motion to strike, because the evidence failed to prove he acted with lascivious intent toward R.W.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Code § 18.2-370(A)(1) provides, in pertinent part, that "[a]ny person 18 years of age or over, who, with lascivious intent, knowingly and intentionally . . . [e]xpose[s] his or her sexual or genital parts to any child to whom such person is not legally married" is guilty of a Class 5 felony. The word "lascivious" describes "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Dietz v. Commonwealth*, 294 Va. 123, 136 (2017) (quoting *Viney v. Commonwealth*, 269 Va. 296, 299 (2005)). In the context of taking indecent liberties with a child, the Commonwealth may demonstrate a defendant's lascivious intent by proving: "(1) that the defendant was sexually aroused; (2) that the defendant made gestures toward himself or to the child; (3) that the defendant made improper remarks to the child; or (4) that the defendant asked the child to do something wrong." *Viney*, 269 Va. at 300. "[P]roof of any one [of the listed] factor[s] can be sufficient to uphold a

conviction under the statute." *Mason v. Commonwealth*, 49 Va. App. 39, 45 (2006) (alterations in original) (quoting *Campbell v. Commonwealth*, 227 Va. 196, 200 (1984)). "However, [we have not] held that proof of one of the four factors is a prerequisite to a finding of lascivious intent." *Id.* at 50.

"Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). "[W]hether the required intent exists is generally a question for the trier of fact." *Crawley v. Commonwealth*, 25 Va. App. 768, 773 (1997) (alteration in original) (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)). The inferences to be drawn from proved facts are within the province of the trier of fact, so long as the inferences are reasonable and justified. *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969).

On brief, appellant points to several inconsistencies in R.W.'s testimony to support his sufficiency challenge. He notes that R.W. was unable to describe what his genitals looked like when he exposed them to her. Additionally, although R.W. testified that appellant made a demand concerning his exposed penis, she was unable to provide additional details or context for the remark. Appellant argues that because the remark was ambiguous and R.W. failed to provide context for it, lascivious intent cannot be inferred from the remark itself. He further contends that because there was no testimony of arousal, gestures, improper remarks, or that he tried to touch R.W., the evidence was insufficient to support his conviction.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the

witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299-300 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). "These same principles apply in cases involving rape, sodomy, and other sexual offenses, which may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence." *Id.* at 548-49.

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.*; *see, e.g.*, *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (holding that a witness was not inherently incredible despite minor inconsistencies because "her testimony did not waiver with regard to the acts of sexual intercourse"). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

Here, any inconsistencies in R.W.'s statements elicited during her cross-examination or during other witnesses' testimony were put before the jury for its consideration. *See Kelley*, 69 Va. App. at 626 ("[A]s Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011))). R.W. consistently testified that

appellant stood in front of her while she knelt at a small refrigerator, exposed his penis, and ordered her to perform fellatio on him. Thus, what appellant's genitalia looked like, and the exact wording of his demand during the incident, were details that a jury could reasonably conclude were minor. The jury weighed the evidence and resolved any inconsistencies in R.W.'s testimony in favor of the Commonwealth in this case. In so doing, the jury necessarily found R.W. credible and rejected appellant's claim of innocence.

The evidence at trial demonstrated that appellant stood in front of a kneeling R.W., exposed his penis, and twice ordered her to perform fellatio. Considering these facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that appellant possessed lascivious intent toward R.W. and that he was guilty of the charged offense.

III. CONCLUSION

We hold that the evidence was sufficient to convict appellant of indecent liberties with a child under the age of 15 years old. Accordingly, we affirm the trial court's ruling.

*Affirmed*.